# Tuskaloosa Cotton-Seed Oil Co. v. Perry.

### *Action on Promissory Notes, with Common Counts.*

1. *Errors not assigned.*—In civil cases, errors not assigned, though apparent on the record, will not be considered; unless it be a want of jurisdiction of the subject-matter, which can not be waived.

2. *General objection to evidence.*—A general objection to documentary evidence, not stating any particular ground, may be overruled because of its indefiniteness.

3. *Objection to deposition, on account of defects in commissioner's certificate.*—An objection to the admission of a deposition as evidence, on account of defects in the commissioner's certificate, being apparent on the face of the deposition (Code, § 2810), must be made before entering on the trial, or it comes too late.

4. *Action against maker of note, by payee and first indorser; possession as evidence of payment.*—The payee and first indorser of a note which has been put in circulation, having paid it, may maintain an action on it against the maker; and being found in his possession, or the possession of his administrator after his death, it is presumed to have been returned to, and paid by one or the other of them.

5. *Proof of execution of note, when not denied by sworn plea.*—In an action on a promissory note against the maker, its execution not being denied by plea verified by affidavit (Code, § 2770), the note is admissible as evidence without preliminary proof of execution.

6. *Note of corporation, signed by its president without resolution of board of directors.*—A promissory note, to which the name of a private corporation is signed by its president, is admissible as evidence against the corporation, at least under the common counts, on proof that notes were thus signed by him, in the usual course of business in the management of its affairs, without special order of the board of directors.

7. *Contract of corporation with president, or other officer.*—The president (or other officer) of a private corporation can not bind it by a contract made in its name with himself personally; but this principle has no application to a promissory note signed in the name of the corporation by its president, payable to his own order, and indorsed by him, for the purpose of borrowing money for the use and benefit of the corporation, and which was so borrowed and used.

8. *Issue on defective plea.*—Issue being joined on a defective plea, after demurrer overruled, this court, on appeal by the defendant, will treat the plea as a defense to the action, without inquiry as to its sufficiency.

9. *Variance.*—In an action against a private corporation, by the personal representative of its deceased president, on a promissory note

[Tuskaloosa Cotton-Seed Oil Co. v. Perry.]

signed in its name by him, payable to his own order, indorsed by him, and paid after maturity by his administrator; issue being joined on a special plea, which averred that he agreed to take stock in satisfaction of his claims and demands against the corporation, and that the corporation was ready and willing to deliver the stock; proof of an agreement to subscribe for additional stock, in satisfaction of claims and demands previously held, does not support the plea.

10. *Executory agreement for discharge of note.*—A verbal agreement to do or accept something else than money in payment and satisfaction of a note, so long as it remains executory, is no defense to an action on the note.

11. *Agreement for extension of time of payment.*—An indefinite agreement for an extension of the time of payment, between the holder and the maker of a promissory note, not supported by a valuable consideration, binds neither the holder nor the accommodation indorser, but the latter may pay without demand or suit, and at once sue the maker.

12. *Error without injury in charges given or refused.*—When, on the undisputed facts, the court might properly have given the general affirmative charge in favor of the plaintiff, errors in the matter of other charges, given or refused, could not have injured the defendant, and are no cause for reversal.

APPEAL from the Circuit Court of Tuskaloosa.

Tried before the Hon. SAM. H. SPROTT.

This action was brought by Mrs. Medora Perry, as administratrix of the estate of her deceased husband, W. H. Perry, against the appellant, a domestic corporation organized under the general statutes of the State; and was commenced on the 9th September, 1886. The complaint contained the common counts, and a special count on a promissory note for $2,000, which was dated at Nashville, Tennessee, October 1st, 1885, payable ninety days after date, at the First National Bank of Nashville, to the order of W. H. Perry; which note was signed, "*Tuskaloosa Cotton Seed Oil Co., W. H. Perry, president*," and was indorsed by W. H. Perry and D. H. Caswell. Said Perry was the president of said corporation, from the time of its organization, until his death in November, 1885. The note sued on, not having been paid at maturity, was protested for non-payment; and it was afterwards paid by the plaintiff, as administratrix of her husband's estate. The defendant pleaded the general issue, in short by consent, and a special plea, which averred "that plaintiff's intestate agreed and contracted with defendant to take stock in defendant's corporation, for all his claims and demands against said corporation; and defendant says, that neither plaintiff nor her intestate ever demanded said stock, but defendant has always been, and is now, willing to deliver said stock for all legal · claims against said corporation as aforesaid." The court overruled a demurrer to this plea, and issue was then joined on it.

On the trial, J. J. Ford, an attorney at law of Nashville, Tennessee, testified, as a witness for the plaintiff, that he had been her legal adviser from the commencement of her administration; that in December, 1885, he learned that several notes were held by the First National Bank of Nashville, on which the name of W. H. Perry appeared as indorser, made inquiries about them, "and at once called on D. H. Caswell, who had succeeded said Perry as president, and inquired about the notes; that Caswell informed him, that said notes were binding obligations on the corporation, and would be paid by it—that they were given for money borrowed by the corporation for the purchase of seed and other materials at the opening of the season, and were made payable to the order of said Perry, and indorsed by him and said Caswell, for the purpose of giving said bank, which advanced the money, their personal security; that it had been in the usual course of the company's business that said Perry, as its president, should give the company the aid of his personal credit by indorsing for it; and that said Caswell urged, that the plaintiff, succeeding to her husband's large interest in the company, should indorse for it in like manner, and lend it her credit;" and that this proposition was declined by her, under the advice of legal counsel.  The first of the three notes, not being paid at maturity, was presented to plaintiff for payment, through said witness as her attorney, as a claim against her husband's estate; and it was afterwards paid by her.  "The defendant objected to the admissions and promises of said Caswell as evidence," and excepted to the overruling of these objections.  On this evidence, "the defendant objected to the introduction of said note as evidence," and also to "the introduction of the certificates of the notary public, and to their legal sufficiency," but without stating any particular ground of objection; and exceptions were duly reserved to the overruling of these objections.  The witness testified, also, that he again called on Caswell, after the maturity and protest of said note, when Caswell repeated his promises that said notes should be paid by the defendant; that the two notes subsequently maturing were paid by the defendant, and witness again called on Caswell for an explanation, "who replied, that it had been impossible for the company to pay off all of the notes, and it was thought best to pay those not protested, as the other had done all the harm it could by going to protest, but that it also should be paid in a short time."  In June, 1886, as the witness further

[Tuskaloosa Cotton-Seed Oil Co. v. Perry.]

testified, "the bank pressed plaintiff for payment of said note, and under threat of suit, being unable to secure further extension, she paid it, and it was surrendered to her. On cross-examination, as to how the note was paid, the witness said, that it was paid partly with money, and partly with the individual notes of Mrs. Perry, which she had since paid in full, as he had been informed by the cashier of the bank to which they were given. Thereupon, the defendant moved the court to strike out the testimony of the witness as to the payment of the note;" and duly excepted to the overruling of the motion.

The plaintiff offered in evidence the deposition of John P. Williams, who was the cashier of the Nashville bank at the time the note was negotiated, and who testified to its payment by the plaintiff, after he had notified her that no further indulgence could be granted by the bank; and further, "that the bank never made any agreement with Mr. Caswell about holding said note." The defendant objected to the admission of this deposition as evidence, but did not state any particular ground of objection; and an exception was reserved to the overruling of the objection.

D. H. Caswell, who succeeded Perry as president of the defendant corporation, was vice-president and general manager of the company at the time said notes were executed and negotiated. One Bowman, who was book-keeper in his office in Nashville, was examined as a witness by the defendant, and "testified that, in the summer of 1885, he heard a conversation in Caswell's said office, between him and W. H. Perry, in which Perry agreed to subscribe for additional stock in the defendant corporation, to the amount of $5,000, and to pay for said stock by satisfying accounts then held, or which might be afterwards held by him, against the company." Said Caswell, who had been introduced as a witness by the plaintiff, testified on cross-examination, "that defendant had always been willing and anxious to give said Perry, or his representative, stock for all his proper claims against the company, but neither said Perry nor his administratrix had ever demanded stock for the claim sued on, nor was the same ever refused by the defendant; also, that he, as president of the defendant corporation, had made arrangements with the holder of said note for additional time for the payment of the same, and that the plaintiff afterwards paid the same against his request and protest. He further testified, also, that said W. H. Perry had been engaged in the

[Tuskaloosa Cotton-Seed Oil Co. v. Perry.]

business of manufacturing and repairing machinery, and held an account against the defendant for machinery and repairs, and that his original subscription for stock ($5,000) had been paid in part by credits on this account, and part in money. The books of the company were introduced in evidence. The minutes of the board of directors did not show that said Caswell was ever authorized to issue stock, or to contract for the payment of its obligations in stock; nor that any action of his, of this kind, was ever reported to, or sanctioned by the board of directors, who, under the by-laws, had power to issue and sell certificates of stock. Said books showed that Perry had subscribed for $5,000 of stock, and had paid for the same in full, but did not show that he had subscribed for any additional stock; nor was there any evidence that the arrangement between Caswell and Perry, testified to by Bowman, was ever authorized by the board of directors, or confirmed or ratified by them, or made known to them; nor was there any evidence that either plaintiff or her representative was ever informed by Caswell, or by any other agency, as to the existence of said alleged contract for the payment of said claim in stock, nor that stock was ever tendered to plaintiff in satisfaction thereof." The plaintiff proved, also, the presentation of the claim by her attorney to Caswell for payment, and his promise to pay it if suit was delayed until September 1st, 1886.

The court charged the jury, at the instance of the plaintiff, as follows: (1.) "If the jury believe from the evidence that the claim sued on was presented for payment to the president of the defendant corporation; that he assented to its justness and correctness, and promised to pay it; then the claim was made an account stated against the corporation, and plaintiff is entitled to recover in this suit." (2.) "If the jury believe from the evidence that the claim sued on was presented for payment, before suit was brought, to D. H. Caswell as president; and that said Caswell was then president, general manager and agent of the defendant; and that he admitted its correctness as a binding obligation of the defendant, and promised to pay it, making no claim that it was to be settled otherwise than in money; this was a waiver by the defendant of the agreement, if such was had with Perry, that he should take stock in payment of claims against the defendant."

The defendant duly excepted to each of these charges as given, and requested the following charges in writing, ex-

[Tuskaloosa Cotton-Seed Oil Co. v. Perry.]

cepting to their refusal: (1.) "If the jury find from the books of the company, in evidence before them, that the secretary and treasurer was duly constituted the general business manager and financial agent of the company, then he was the proper officer to sign the corporate name to notes for borrowed money, in the absence of other special authority; and W. H. Perry had, as president of the company, no legal authority to sign the name of the company to the note here sued on, and did not bind the company thereby." (2.) "If the jury believe from the evidence that the president of the bank in Nashville, which held and was the owner of said note, agreed with the president of the defendant corporation to give further time on the note; and that the plaintiff, as administratrix of Perry, afterwards paid said note, against the protest and request of the defendant; then the plaintiff can not recover in this action."

The admission of the note and protest as evidence, of the deposition of Williams, "of the evidence offered by the plaintiff as to the payment of the note," the charges given, and the refusal of the charges asked, are now assigned as error.

MARTIN & McEACHIN, for the appellant.—(1.) The note was not competent evidence to the jury, because it was made by the president of the defendant corporation, payable to himself; and no officer of a corporation, or other agent, can make such a contract with himself.—Morawetz Corp., § 517. Nor had the president any power, under the charter and by-laws of the corporation, to sign the corporate name to notes, that power being given only to the general manager and financial agent of the corporation.—*Ib.* § 537. (2.) The deposition of Williams ought not to have been admitted, because the certificate of the commissioner is fatally defective—in fact, is not intelligible. (3.) The court erred in admitting as evidence the promise and declarations of Caswell, as his promise could not fix a liability on the company. Mor. Corp., § 540. A corporation is not bound by the declarations of its officers, unless made while acting in and about the business they are authorized to transact for it.—*Smith v. Plank-road Co.*, 30 Ala. 650; *Rives v. Plank-road Co.*, 30 Ala. 92; *Ready v. Mayor of Tuskaloosa*, 6 Ala. 327. (4.) Perry having contracted with the corporation to take stock for all his claims against it, no subsequent promise on the part of Caswell could absolve him from it.—Authorities

[Tuskalcosa Cotton-Seed Oil Co. v. Perry.]

above cited. (5.) The payment by Mrs. Perry was voluntary, and was made against the protest of the defendant, who had arranged with the bank for an extension of time. She was discharged from liability on the note, by the failure to sue to the first term after maturity; and the payment by her imposed no liability on the defendant.

HARGROVE & VAN DE GRAAFF, *contra.*—(1.) The execution of the note not being denied by sworn plea, it was admissible as evidence without other proof.—Code, § 2770. The pleas were an admission that each count showed a good cause of action.—*Brewer v. Strong,* 10 Ala. 961; *Strickland v. Burns,* 14 Ala. 511. (2.) The objection to the deposition of Williams came too late.—Code, § 2810. (3.) All of the objections to the documentary evidence were general and indefinite, and might have been overruled on that account. *Dryer v. Lewis,* 57 Ala. 555; *Waller v. Rhea,* 10 Ala. 451. (4.) The objection to the declarations of Caswell must be considered as waived, not being made the basis of an assignment of error.—*Rowland v. Plummer,* 50 Ala. 182; *Lehman v. Meyer,* 67 Ala. 396. (5.) The note was executed by Perry, in the usual course of business, as president of the corporation; and no special order or authority from the board of directors was necessary to make it binding on the corporation. *Talladega Insurance Co. v. Peacock,* 67 Ala. 255; 17 Ill. 40; 1 Allen, 34; 15 John. 44; 17 Barb. 171. (6.) The plaintiff had a right to pay the note at maturity, without demand or notice, and maintain an action against the maker.—*Pinney v. Gregory,* 102 Mass. 186. (7.) The agreement between Perry and Caswell, to which Bowman testified, had no reference to the note, and was, moreover, executory; nor was it binding on plaintiff as administratrix.—9 B. & C. 167; 15 C. B. 400; *Phipps v. Jones,* 59 Amer. Dec. 708.

CLOPTON, J.—There is no assignment of error, which requires us to consider the rulings of the court in respect to the admissibility in evidence of the declarations and promises of Caswell, the president of the defendant corporation. Unless it be want of jurisdiction of the subject-matter, which can not be waived by the parties, errors, though they may be apparent in the record, will not be regarded, if not assigned.—*Lehman v. Meyer,* 67 Ala. 396. The objection to the documentary evidence is general and undefined, and, for this reason alone, could properly have been disregarded

[Tuskaloosa Cotton-Seed Oil Co. v. Perry.]

by the court.—*Dreyer v. Lewis*, 57 Ala. 551.   The objection
to the deposition of Williams is, that the commissioner's
certificate is fatally defective.   The defect was disclosed in
the deposition, and the objection, which goes to the admissi-
bility of the entire deposition, was made after the trial was
commenced.   The statute is imperative, that all objections
to the admissibility in evidence of the entire deposition must
be made before entering upon the trial, unless the matter is
not disclosed in the deposition, and appears after the com-
mencement of the trial, and prohibits such objections being
made afterwards.—Code, 1886, § 2810.

Plaintiff's intestate was president of the defendant corpo-
ration at the time of the execution of the note, which is the
foundation of the suit, and as such officer signed the cor-
porate name thereto.   The note is payable to his order, and
was indorsed by him, and after his death was paid by
plaintiff as the administratrix of his estate.   She now seeks
by this action to recover the amount so paid.   The indorse-
ment of the name of her intestate on the note, does not, of
itself, disentitle the plaintiff to sue thereon.   Being payable
to his order, and found in her possession, the presumption
is, that the note was regularly returned to her, as his per-
sonal representative.—*Herndon v. Taylor*, 6 Ala. 461.   In-
dependent of the presumption, the evidence incontestably
shows that she obtained the note by paying the amount due,
in discharge of the indorsement.   The payee and first in-
dorser of a note, which has been put in circulation, may pay
it, and maintain an action on the note against the maker.
*Pinney v. McGregor*, 102 Mass. 186.

The next assignment of error refers to the competency of
the note as evidence to go to the jury.   The complaint con-
tains a special count on the note, which avers that it was
made by defendant.   Its execution was not put in issue by
plea verified by affidavit.   In such case, preliminary proof
of execution is not requisite under the statute.—*Wimberly
v. Dallas*, 52 Ala. 196.   Also, if the plaintiff had been enti-
tled to recover only on the common counts, the proof of ex-
ecution and authority is sufficient to admit the note in evi-
dence.   It is not controverted, that it was the usual course
of business, in the management of the affairs of defendant,
that notes for money borrowed should be signed by the
president, without previous order of the board of directors;
and that many notes made by plaintiff's intestate, and par-
ticularly two other notes of the same tenor, made in the same

manner, about the same time, and for the same purpose as the note in suit, had been paid by the defendant. These acts of the president, in connection with such recognition and acquiescence of the corporation, are competent and sufficient evidence of the fact and scope of the agency.—*Talladega Ins. Co. v. Peacock*, 67 Ala. 253.

But the objection is not rested on a general want of authority to make notes binding on the corporation, but on the invalidity of the note on which the suit is founded. The specific objection now made is, that the note was executed by an officer of the corporation, payable to his own order— a contract with himself personally. The objection seeks to have the question whether it is a binding obligation on defendant determined by the court, without submitting it to the jury on the whole evidence. This can not properly be done. If there had been a special plea verified by affidavit, setting up the matter of the objection, the note and the evidence relating to the purpose, facts and circumstances of its execution, all should have gone to the jury, and the validity of the note determined by them under proper instructions from the court. The note is not void, merely because it appears on its face to have been made by the president, payable to his own order, and indorsed by him. As, however, the question of its validity largely involves the merits of the controversy, we shall consider it as if properly raised. The general rule will be conceded, that an officer of a corporation can not use his official position for his own advantage—can make no valid contract with himself personally, and can not represent the corporation in any transaction in which he has a personal interest. The question is, does the note, on the undisputed facts, fall within the principle? There is no disputation, that the note was given for money loaned or advanced by the First National Bank, at which bank it is payable; the money thus borrowed was used by the corporation in the purchase of cotton-seed and other material necessary to the operation of its business; the note was carried as a liability on the books of the company, and it was indorsed by plaintiff's intestate for the accommodation of the corporation, in order to enable it to obtain the money. It is manifest, from these facts, that the plaintiff's intestate had no interest in the note, or in the money procured thereby; that it was not a contract made with him personally, but with the bank; and that it was not for his benefit or advantage. The note having been made to borrow money for the corporation,

which it received; and having retained for its own benefit the fruits of the transaction, the defendant is estopped to deny, as against the holder from whom the money was borrowed, the binding character of the obligation, and the authority of the president to make the transaction, and equally against the accommodation indorser.

It is manifest that the plaintiff is entitled to recover, unless the special defense set up avails to defeat the suit. The special plea avers, that plaintiff's intestate contracted with the company to take stock for all his claims and demands against the corporation, which the defendant has always been willing, and is now willing to deliver, but that neither plaintiff, nor her intestate, has ever demanded the stock. A demurrer to the plea having been overruled, we must, on this appeal, which is taken by defendant, treat it as a defense to the action, if sustained by proof. The only evidence which was offered to support the plea is, that in a conversation in the summer of 1885, between plaintiff's intestate and Caswell, then the general manager of the company, the former agreed to subscribe for additional stock to the amount of five thousand dollars, and to pay for such stock by satisfying the accounts which he held, or might thereafter hold against the company. The contract, as set forth in the plea, is to take stock for claims and demands which plaintiff's intestate then had, and has no reference to demands subsequently acquired, or to a subscription for stock. It is clear there is a material variance between the averments of the plea and the evidence; and the court might properly have instructed the jury, that the truth of the plea was not proved. But, passing the consideration of the effect of this variance, the agreement as proved is executory—to subscribe for stock in the future, and to pay for it by satisfying claims and demands against the company. No subscription for stock was made, and the agreement was not even partially performed. An oral agreement, that a promissory note is to be discharged by doing something other than paying money, so long as it remains executory, is inoperative, and no defense to a suit on the note.—*Patrick v. Kelly*, 83 Ala. 420. It is neither payment, nor accord and satisfaction, until performed. On a failure to perform such executory agreement, the corporation can only recover the damages suffered by its breach.

It should further be observed, that the agreement was made in the summer of 1885, and that the note was not executed until the first of October thereafter, which, with the

other two notes of the same tenor, executed in the same manner, and for the same purpose, heretofore referred to, aggregated the sum of six thousand dollars. It is not pretended that, at the time the notes were made, any thing was said or understood as to either of them being solvable in stock. The plaintiff's intestate was a manufacturer and repairer of machinery, and had furnished machinery to defendant, for a part of which it was indebted to him at the time the agreement was said to have been made; and no doubt it was anticipated that he would have to repair and furnish other machinery. It would be an unauthorized extension of the agreement, to include within its terms demands which accrued by the subsequent indorsement of a note of defendant for its accommodation, and to enable it to borrow money from another; on which the defendant was primarily liable, and which was to be paid in money. If, therefore, plaintiff's intestate had subscribed for stock in pursuance of the agreement, which the defendant was ready and willing to issue, it would be no defense to this suit.

And besides, the evidence shows that, after plaintiff had paid and held the note, the president and general manager of defendant promised the attorney of the plaintiff that it should be paid on or before September 1st, 1886, if suit was suspended until that time, which was done.

The defense that an arrangement was made by the president of the defendant with the holder of the note, for an extension of the time of payment, is not set up by plea; and if it was, an indefinite arrangement, unsupported by a valuable consideration, was a mere gratuity, which bound neither the holder nor the indorser. It was the right of plaintiff to pay the note after maturity, without demand or suit, and resort to the maker for reimbursement.

On the undisputed facts, and the indisputable conclusions from the evidence, the court would not have erred, had the affirmative charge in favor of the plaintiff been given; consequently there are no errors which could have worked injury.

Affirmed.