(79 South. 373)

MID–CONTINENT LIFE INS. CO. v. BEASLEY et al. (4 Div. 787.)

(Supreme Court of Alabama. June 27, 1918.)

1. PRINCIPAL AND AGENT ⬙22(1)—EVIDENCE OF AGENCY—DECLARATION OF AGENT.

Where the fact of agency rests in parol, or is to be inferred from the principal's conduct, and there is evidence tending to show agency, the agent's acts or declarations are admissible.

2. PRINCIPAL AND AGENT ⬙23(2) — THE RELATION—CIRCUMSTANTIAL EVIDENCE.

Agency may be proved by circumstances.

3. PRINCIPAL AND AGENT ⬙23(1) — THE RELATION—SUFFICIENCY OF EVIDENCE.

Evidence *held* sufficient to establish agency for a corporation, to sell its capital stock.

4. PRINCIPAL AND AGENT ⬙115(2) — DEFENSES AGAINST PRINCIPAL—REPRESENTATIONS OF AGENT.

The principal is bound by the inducing representations of its agent in selling its stock that the buyer would not have to pay the bal-

ance of price above cash payment and note given, but that the dividends would satisfy it.

5. CORPORATIONS ⬙82 — SUBSCRIPTION — ACTION—DEFENSE.

Agreement of plaintiff in selling its capital stock that balance of price above cash payment and note given will be satisfied out of stock dividends, to be available as defense to action for such balance, does not require buyer to have demanded application of dividends.

6. PRINCIPAL AND AGENT ⬙28—PRESUMPTION—CONTINUANCE.

Continuance of the established personal relation of agency will be presumed till the contrary is shown or a different presumption is raised from the nature of the subject.

7. CORPORATIONS ⬙82 — SUBSCRIPTIONS — MODIFICATION OF CONTRACT.

Right of purchaser of plaintiff's capital stock, under agreement that balance of price over cash payment and note given would be satisfied out of stock dividends, was not changed by the fact that, on plaintiff refusing to give certificate without payment of balance, he executed note and mortgage therefor, on selling agent's advice, to secure certificate; this not being a distinct transaction, but the product of, consequent on, and not inconsistent with, original contract.

Appeal from Circuit Court, Covington County; A. B. Foster, Judge.

Suit by the Mid-Continent Life Insurance Company against E. J. Beasley and others. From adverse decree, complainant appeals. Affirmed.

A. R. Powell of Andalusia, for appellant. S. H. Gillis, of Andalusia, for appellees.

McCLELLAN, J. This bill was filed by appellant against the appellees to. foreclose a mortgage executed to the appellant by E. J. Beasley and wife on January 24, 1912, to secure the payment of $750 and annual interest installments thereon. In 1909 Beasley agreed to buy, and did buy, ten shares of the preferred capital stock of the complainant corporation of the par value of $1,200. The sale was effected by Barnes and Henry. They claimed and undertook to represent the complainant in the premises. According to the agreement, Beasley paid, in cash, to Barnes $150, and gave his note for $300, payable to the complainant. He later paid this note to the complainant. With respect to the balance of the purchase money, viz. $750, Beasley gave no security; and so for the reason that Barnes assured him at the time (1909) that the company would send him (Beasley) a certificate representing ten shares of preferred capital stock in the company, and that the balance of the purchase money would be paid by the dividends of the company. Subsequently, when Beasley did not receive the certificate, he complained to Barnes, and Barnes advised him to pay the $300 note to the company, to the end that he might get the certificate. Beasley paid this note to the company; but the company refused to send the certificate until the balance ($750) was paid. Beasley reported this refusal to Barnes; and Barnes told

Beasley to "manage some way to get that certificate." Barnes then suggested to Beasley that Beasley give the company his note for the balance, viz. $750. The company sent Beasley the mortgage here sought to be foreclosed. Beasley and his wife signed it. Beasley then received from the company a certificate representing ten shares of common stock, instead of, as promised, preferred stock. Beasley has paid at least two of the interest installment notes secured by the mortgage. On March 4, 1914, Beasley wrote the company as follows:

"Your communication to hand. I have had some serious sickness in my family which has crippled me financially. I will be glad to pay the interest on my note by April 1st. Hope you will bear with me as I am anxious to do the right thing."

This bill was filed March 1, 1917. So far as this record shows, Beasley never made to the company any suggestion, demand, or protest based upon the representations or assurances given by Barnes in 1909, unless the statements made by Barnes to Beasley can be attributed to the company as upon the theory that Barnes was the authorized agent of the company in the premises, or that through acts of the company the ratification or confirmation of what Barnes did or said in his communications or dealings with Beasley was effected.

[1-5] From the evidence the court was authorized to conclude as of fact that Barnes was the complainant's agent to consummate the sale of its capital stock to Beasley; for that matter, to effect sales generally. Where the fact of agency rests in parol, or is to be inferred from the conduct of the principal, and there is evidence tending to show the agency, the acts or declarations of the agent are admissible. Salvo v. Wilson, 189 Ala. 446, 66 South. 613. Agency, like any other fact, may be proved by circumstances. Hill v. Helton, 80 Ala. 528, 1 South. 340; Salvo v. Wilson, supra. Barnes sought out Beasley to effect the sale to him of capital stock in the complainant corporation. He received $150 in cash and a note, payable to the company, for $300. The company afterwards accepted the payment of this note, and by subsequently asserting claim against Beasley for $750, as the balance due it for the stock, itself afforded evidence of its satisfaction with the amount involved in the sale by Barnes of the stock to Beasley. In the light of these acts and circumstances, the declaration of Barnes to Beasley that he was, in 1909, the complainant's agent in the premises satisfactorily establishes the fact of agency on the part of Barnes, for the corporation. Barnes' principal, the corporation, being the actor in this cause, his principal is bound by the representations or assurances made in 1909, by Barnes in effecting the sale of its stock to Beasley, just as if the principal had itself made them to induce Beasley to buy the stock. Philips, etc., v. Wild, 144 Ala. 545, 548,

39 South. 359. It was, in such circumstances the duty of this principal the vendor, to inform itself of the representations or assurances made or given by its agent, Barnes, in the premises. Philips, etc., v. Wild, supra. The evidence leaves in no reasonable state of doubt that Barnes assured Beasley, thereby inducing his purchase of the stock, that he would not be obliged to pay the balance ($750); that the dividends would satisfy the stated balance. It is true Beasley testified, at one point, that Barnes said he (Beasley) could either pay the balance or the dividends would effect that result. This statement is reconcilable with Beasley's testimony that Barnes unqualifiedly assured him that he would not be obliged to pay the balance; that the dividends would discharge it. The effect of the statement, expressing the indicated alternative, was that Beasley might, by paying the balance out of his own funds, anticipate the reimbursing reception by Beasley of the dividends in an amount equal to the balance, viz. $750. The point and pith of the assurance given by Barnes was that the money necessary to discharge the stated balance of the purchase money for the stock would be the product of dividends from the company. If the company had, before the execution of the mortgage in 1912, sued Beasley for the balance, the action could have been successfully defended on that ground, viz. that by the terms of Beasley's contract of purchase the stated balance was only demandable from the particular source prescribed, dividends from the company. This matter of defense was available and subject to inquiry. Barlow v. Flemming, 6 Ala. 146; Bank v. Compton, 192 Ala. 16, 18, 68 South. 261, among others therein cited. No demand by Beasley for the application of dividends was required. Did the execution, in January, 1912, by Beasley of the note and mortgage here involved change the rights of the parties?

[6, 7] When the existence of a personal relation is once established, the law presumes its continuance as before, until the contrary is shown, or until a different presumption is raised, from the nature of the subject in question. 1 Greenl. on Ev. (15th Ed.) § 41; Friend v. Yahr, 126 Wis. 291, 307, 104 N. W. 997, 1 L. R. A. (N. S.) 891, 110 Am. St. Rep. 924; Jones on Ev. (2d Ed.) § 58 and notes. The decision of this court in McKenzie v. Stevens, 19 Ala. 691, a deliverance often since approvingly followed, aptly illustrates and applies the general rule. It was satisfactorily shown, as before stated, that Barnes was the company's agent to sell its capital stock. The company offered no evidence in either refutation, limitation, or explanation of this relation between it and Barnes. There is nothing in the evidence and the subject-matter, or either, that negatived the presumption that Barnes' relation to the company continued to exist. On the contrary, one effect of the meager evidence is

that Barnes enjoyed, in January, 1912, some information if not authority with respect to the company's desires or purposes at least so far as this transaction, originating in 1909, was concerned. According to the testimony, he told Beasley to give the company his note that he might be certain to receive the then delayed certificate Barnes had promised (for the company) should come upon the payment of the $150 and the execution and delivery of the note for $300. It was natural to suppose, as doubtless Beasley did, that the status of a stockholder was a prerequisite to the right to receive, according to Barnes' original assurance, the benefit of dividends, and that this status would be the better evidenced by the certificate so attesting. The undisputed testimony is that Beasley gave the mortgage in order to get the certificate, an act in accord with Barnes' suggestion or advice. The facts, acts, and circumstances disclosed by the evidence prevent the treatment of the matter of giving the mortgage in 1912 as a distinct transaction. It was the product of, was consequent upon, the contract made in 1909. The execution of the mortgage was not necessarily inconsistent with Beasley's continued reliance upon Barnes' assurance that he would not be required to pay the balance ($750) otherwise than through the application of dividends on the stock. The notes and mortgage represent an unqualified promise, only a promise, to pay money, but there is nothing in the terms of these papers that negatived Beasley's reliance or right to rely upon the previous assurance, given by Barnes as the company's agent, that the stated balance would be satisfied out of dividends on the stock. Barlow v. Flemming, 6 Ala. 146. The notes and mortgage were given and taken subject to the stated condition of the contract, with reference to the balance, entered into by Beasley with Barnes. These considerations lead to the conclusion prevailing below. The decree denying relief to the complainant is therefore affirmed.

Affirmed.

ANDERSON, C. J., and MAYFIELD and GARDNER, JJ., concur.