(122 So. 802)

**BLOUNT COUNTY BANK v. ROBINETT & McCAY. (6 Div. 357.)**

Court of Appeals of Alabama. April 9, 1929.

Rehearing Denied May 7, 1929.

Nash & Fendley, of Oneonta, for appellant.

J. T. Johnson, of Oneonta, for appellees.

SAMFORD, J. The plaintiff introduced in evidence the note sued on. The defendants pleaded the general issue in short by consent and a failure of consideration, and offered evidence tending to prove that J. A. Head was a cotton buyer buying cotton at Oneonta; that the defendants were warehousemen storing cotton, upon which they issued standard warehouse receipts; that Head bought cotton from farmers, and in paying for same he gave check for the purchase price on the bank, attached the warehouse receipt, and, when so attached, the bank paid the check, retaining the receipts as security for the money advanced as overdraft. When the cotton was sold, draft was drawn by Head for the amount of the invoice, on the purchaser, turned over to the bank to be collected and credited to his account, at which time the bank would turn over to Head corresponding warehouse receipts for the cotton sold, and Head would then deliver these receipts to defendants for cancellation. During a period of several months, many transactions of a similar nature were consummated between the parties. The transactions set out in the record covered the buying and selling of cotton during the seasons of 1924–25, and was a losing business, the aggregate overdraft becoming larger and larger.

One of these transactions varied somewhat from the others. Head bought the cotton, gave the checks to sellers, attached the receipts, sold and shipped the cotton, gave the bank the invoice and draft for same, which draft was collected and placed to the credit of Head, but Head failed to withdraw from the bank the warehouse receipts for eight bales of the cotton so shipped, and for which the bank received the money and applied to his then overdraft amounting to $4,007.08. This was in February, 1925, and the failure to return the receipts was not noted until July, 1925, when the warehouse was being examined by the department, who discovered the shortage and demanded the canceled receipts under a threat of a criminal prosecution, as provided by statute. Upon inquiry and investigation, the receipts were found in the bank, and were by the defendants demanded from the bank and refused, unless defendants would execute a note payable to the bank, payable on demand in an amount equal to the value of the eight bales of cotton; it being then and there understood and agreed between the president of the bank and defendants that, if the bank had already re-

ceived the money for the cotton, the note would not have to be paid. Being under threat of prosecution, the defendants executed the note and received the receipts for the cotton. The defendants insist that, at the time the note was signed, it was agreed that, if it was ascertained that the bank had received the money for the eight bales of cotton, the note would not have to be paid by defendant. The president of the bank said there was no such agreement at the time of signing the note, but: "I said to them after they had given the note and after the prosecution had terminated, that if it developed that the bank had actually got the money on the receipts I didn't think it would be right for them to pay it and I say so yet." The issue as stated to the jury by the trial judge was:

"If it was then and there agreed between Judge Davidson, the President of the Oneonta Trust & Banking Company and these defendants, that they should execute a note for the reasonable market value as of that date of the eight bales of cotton, and that there was to be no liability on the note if the proceeds of that cotton had been paid to the bank, and you ascertain from the evidence, gentlemen of the jury, that the proceeds of that cotton had been paid to the Bank, then, in that event, there would have been no consideration for the note sued on, and that would defeat a recovery by the plaintiff in this case.

"But, should you determine from the evidence that the agreement was that these defendants execute a note for the reasonable market value of the eight bales of cotton to the Oneonta Bank and Trust Company, and that that note was to be applied upon the indebtedness of one Head to this Bank, and it was so applied and Head released to the extent of the notes under said indebtedness why then that would have been sufficient consideration for the execution of the note, and would defeat the defendant's plea of failure of consideration. So that is the issue in this case as the Court sees it. How was it. What was the contract and the agreement that you find that contract and agreement was in the light of all the circumstances and facts in this case."

The above and foregoing were the only questions submitted to the jury under the charge of the court, and on those issues the jury found in favor of defendants. So that we cannot, and do not, pass upon the question urged by defendants (appellees) in brief that, if the only consideration for the note, the foundation of this suit, was the delivery to the defendants of the eight cotton warehouse receipts, and if the bank had received pay for this cotton, before the giving of the note, this would show a failure of consideration and for a recovery. There are authorities which seem to support this view. McCaleb v.

Price, 12 Ala. 753; Bullock v. Ogburn, 13 Ala. 346; Stark v. Henderson, 30 Ala. 438; Drake v. Flewellen, 33 Ala. 106; Orr v. Stewart, 13 Ala. App. 542, 69 So. 649. But this question is not presented in this record.

Nor is the question of the giving of the note under duress of a criminal prosecution, the consideration, either in whole and in part being in aid of the suppression of a criminal proceeding, here presented. That question was not submitted to the jury.

■■ The question presented by this record, and which we are to decide, is whether the contemporaneous agreement alleged by defendants to have been made with the president of the bank at the time of the signing of the note sued on, if proven to the satisfaction of the jury, presents a good defense of a failure of consideration, when coupled with the further proof that the bank had received pay for the cotton represented by the eight cotton warehouse receipts. There are many authorities which hold that a verbal agreement made contemporaneously with the execution of a promissory note that it may be discharged in some other way than by the payment of money, while it remains executory, is not addressed to the consideration of the note, but is designed to show an agreement repugnant to, and contradictory of, the terms of the note and of the intention of the parties as therein expressed, and that to permit this would be to convert the note from an absolute to a conditional promise.

The foregoing statement of the law is supported by the following authorities: Gliddens v. Harrison, 59 Ala. 481; Ford v. Southern Motor Co., 208 Ala. 170, 93 So. 902; Sommerville v. Stephenson, 3 Stew. 271; Montgomery R. Co. v. Hurst, 9 Ala. 513; Patrick v. Petty, 83 Ala. 420, 3 So. 779; Tuskaloosa Cotton-Seed Oil Co. v. Perry, 85 Ala. 158, 4 So. 635; Ex parte South, 205 Ala. 31, 88 So. 221; Benson's Adm'rs v. Harrison, 39 Mo. 303; Hamilton Furniture Co. v. Brenard Mfg. Co., 215 Ala. 187, 110 So. 153.

The above authorities are persuasive of appellant's contention that the court erred in its rulings on these questions, but there seems to be a distinction between these cases and the case at bar, where the note does not purport to set out the contract, but is only an evidence of a promise to pay as the result of contract between the parties. In Parker v. Bond, 121 Ala. 529, 25 So. 898, it is held that the execution of a promissory note does not preclude the admissibility of evidence of transactions and declarations between the parties at the time and just before the signing, if these go to show want or failure of consideration. To the same effect is Gillespie v. Hester, 160 Ala. 444, 49 So. 580; Jefferson County Sav. Bank, v. Compton, 192 Ala. 16, 68 So. 261; Mid-Continent Life Ins. Co. v. Beasley, 202 Ala. 35, 79 So. 373; Phillips v. Matthews, 205 Ala. 480, 88 So. 641; Barlow v. Flemming, 6 Ala. 146; Wells et al. v. Drane, 206 Ala. 583, 90 So. 898. The foregoing authorities seem to sustain the trial court in his rulings on the evidence and in the excerpt from his charge, to which exception was reserved. In support of the above, and in line with the cases from this state, is a long line of cases cited and collated in 20 A. L. R. 431, note 2, to sustain the text there written: "Parol evidence is admissible to show that a bill or note, absolute in form, although manually delivered to the payee, was not to become a binding obligation except upon the happening of a certain event." So that the decisions seem to conclude that whether the writing, which appears as a memorial of a transaction, exclusively represents the terms of the transaction as an embodiment of the entire transaction, is a question of intention; and, being such, the application of the rule to specific facts is one of no small difficulty. 1 Greenlf. Ev. p. 305f. With this in mind, our decisions are to the conclusion that: "A promissory note is not affected by the rule that written contracts cannot be explained by parol evidence, and its consideration is a proper subject of inquiry, whether shown by parol or in writing." Wells v. Drane, supra.

It follows that the several rulings of the court were free from error, and the judgment is affirmed.

Affirmed.