194 So. 823

**GENERAL MILLS, Inc., v. O'REAR.**

**6 Div. 638.**

Supreme Court of Alabama.
March 21, 1940.

Arthur Fite, of Jasper, for appellant.

Pennington & Tweedy, of Jasper, for appellee.

KNIGHT, Justice.

The first three counts of the complaint are the common counts, while counts four and five declare upon written contracts, one under date of July 7, 1937, and the other under date of August 12, 1937. The first mentioned contract covers the sale by the plaintiff to defendant of 210 barrels of flour, at the price of $6.75 per barrel, and for shipment on or before ninety days, under orders from the defendant.

The second contract, that sued on in count five, covers the sale by the plaintiff to defendant of three hundred barrels of flour, at the price of $6.60 per barrel, and for shipment on or before November 10, 1937, upon shipping instructions from the purchaser-defendant.

The defendant pleaded in short by consent "the general issue, with leave to give in evidence any matter that would constitute a good defense either under the general issue or under any special plea, the same as if such matter was specially pleaded," with like leave to plaintiff by replications, general or special.

In each of counts four and five, the plaintiff sues to recover a stated sum of money as liquidated damages for the breach of the contracts sued on, by reason of the defendant's failure to comply with said contracts of ordering out, and accepting said flour, which the plaintiff alleged it was ready, able and willing to ship to defendant upon his directions, as provided in the contracts.

With reference to the first of said contracts, it was the defendant's contention, and the court permitted evidence to that effect, that two representatives of the plaintiff—salesmen—called upon him on July 7, 1937, soliciting an order for flour, that defendant told them that the plaintiff's flour "had not been standing up to what they recommended it to be, and that it was not giving satisfaction like it should have;" that these salesmen said they would give

him good flour and would guarantee it·to be as good or better than any flour at that price; that during said year defendant had been getting flour from plaintiff, which was shipped from its Mobile mills; and said salesmen, before the order and contract was signed for the 210 barrels of flour (sued on in the fourth count), said plaintiff had "plenty of mills and had twenty-one in all, and would ship it (the flour) from some other mill;" that after they had made that statement the defendant, without reading the contract, signed the order for 210 barrels. This contract called for "pure Gold Pin" flour, and the written contract stipulated that the flour should be "representative" of the brand or grade specified in the contract.

This order for the 210 barrels of flour was then forwarded by the salesmen—McCrea and Calvert—to plaintiff's head office in Atlanta, Georgia, where it was formally accepted in writing by the plaintiff. No flour was ordered out by defendant, or shipped to him on·this contract.

That about a month after giving the above mentioned order for 210 barrels of flour, Bull Connor, another salesman of the plaintiff, and with whom defendant had theretofore had his dealings in buying flour from plaintiff, called upon defendant and undertook to secure from him a new order for some of plaintiff's flour, telling defendant at the time that the defendant was in his territory, and that McCrea and Calvert were not supposed to operate in his territory. That before the defendant gave the second order, sued on in count five of the complaint, the following conversation occurred between the said Connor and defendant: "He asked me to give him a new order for flour, that I had that bought from some outside people ·that was not supposed to be in this territory, which was his territory and he was supposed to work it and he could and·would·do better with me than they could and ·(if) I would change this order and give it to him he would cancel the 210 barrel order, also give me a better price on it. I told him I had had trouble ·with the flour and he· said he would ship this from Louisville instead of Mobile and ·give me a better grade of flour; and said he would come out and help me advertise and help me go out and work the country trade; I had some country trade." That defendant signed the order or contract without reading it. This last order or contract called for 300 barrels of Pure Gold

Self Rising flour at $6.60 per barrel and was forwarded by Connor to Atlanta, Ga., and there accepted by the plaintiff in writing on August 12, 1937.

After this last contract was made, the plaintiff shipped 10 barrels of flour last contracted for to defendant.

There was evidence tending to show that this flour (10 barrels) was not wholesome, in fact bad, and that customers of defendant returned it to defendant and he replaced it with other flour from his stock. However, defendant paid plaintiff for said flour, without reclamation on plaintiff on account of the quality of the same.

There was evidence offered and admitted, over plaintiff's objection, that Connor did not comply with his oral agreement to help the defendant advertise the flour and work up the trade.

The contracts sued on do not contain any of the agreements alleged to have been made with the defendant by the plaintiff's salesmen, or by any one of them.

There was other testimony in the case but we do not think it necessary to set it out in detail, but it is well here to state that the testimony shows without conflict that the said McCrea, Calvert and Connor were mere traveling salesmen of plaintiff, and any order that was given them had to be accepted by the plaintiff's head office to be binding on plaintiff.

In the case of Abercrombie v. Martin & Hoyt Co., 227 Ala. 510, 150 So. 497, 498, it was observed: "The general rule of law, that one who deals with an agent is bound to know the extent of his authority, is fully recognized, and one absolutely necessary to the protection of the principal in all actions brought against him founded upon contracts made by an agent. The doctrine is equally well established, and rests upon equally sound principles of law, that a principal who would seek to avail himself of a contract made by an agent for him, whether such agent be appointed or self-constituted, is bound by the representations made and methods employed by the agent to secure the execution of the contract. And it is the duty of the principal to inform himself as to what representations may have been made. This is true regardless of the fact that the agent had no authority to make such representations. Bell, Rogers, etc., Bros. v. Jenkins, 221 Ala. 652, 130 So. 396; Williamson v. Tyson, 105

Ala. 644, 17 So. 336; Philips & Buttorff Co. v. Wild Bros., 144 Ala. 545, 39 So. 359; Capital Security Co. v. Owen, 196 Ala. 385, 72 So. 8; Mid.-Cont. Life Ins. Co. v. Beasley, 202 Ala. 35, 79 So. 373; Brenard Mfg. Co. v. Cannon, 209 Ala. 626, 96 So. 760; Grissom v. Colt & Co., 218 Ala. 336, 118 So. 580; Colt Co. v. Price, 210 Ala. 189, 97 So. 696."

In the case of Jackson et al. v. Sample et al., 234 Ala. 75, 173 So. 510, 512, it was said: "It is perfectly apparent that if the condition on which a note is payable is the breach of an express or implied covenant made verbally by the payee at or before the note was made, not varying any written contract of such payee, but which was an inducement to its execution, it may be shown in defense, but not so if such condition, not relating to the consideration, has the effect to change the integrity of the contract, and make it speak a different obligation further than as affected by the consideration."

██ It is perfectly clear that Connor's oral agreement with the defendant to cancel the first order for 210 barrels of flour, and which was made at the time the August 10, 1937, order was given to Connor for the 300 barrels of flour, was an inducement to the execution of the last order for the 300 barrels of flour, and went to the consideration of said contract. It was therefore permissible to show Connor's oral agreement to cancel the first contract.

When the plaintiff accepted the second contract, and sued thereon, this was a ratification of the acts of Connor and was binding on the plaintiff. Abercrombie v. Martin & Hoyt Co., supra; Jackson et al., v. Sample et al., supra.

In this view of the law and under the undisputed evidence, the plaintiff was not entitled to recover on the contract of July 7, 1937, sued on in the fourth count of the complaint.

However, with reference to the second, or Connor order, a different question is presented.

██ After the second contract was signed by the defendant, and accepted by the plaintiff, it appears, without conflict in the evidence, that the plaintiff shipped the defendant ten barrels of flour under said second contract. The evidence tends to show that this flour, or a large part of it, was not wholesome, would not make biscuits, had bad odor or taste when made and cooked into biscuits. That much of it which was sold by defendant to his customers was returned by them, and defendant had to make it good from other flour which defendant had in stock.

The contract, in paragraph 10, contains the following provision with reference to waiver of claim or defense based on the quality of the commodities contracted for: "10. Warranty. Seller expressly warrants that any flour contracted herein will be representative of the brand or grade specified herein, and that any feed contracted herein will be equal to the minimum requirements of the law of the State named herein as destination. Buyer hereby waives any claim or defense based on the quality of the commodities specified herein unless (1) within 10 days after receipt of said commodities Buyer gives Seller written notice by registered mail specifying the nature of the complaint, and (2) within said 10 days sends by express to Seller a 5 lb. sample of the goods alleged to be defective or inferior and (3) within 30 days after the arrival of said goods Buyer sends Seller an itemized, verified statement of all loss and damage claimed by Buyer as a result of said alleged defective or inferior goods. Provided that the compliance by Buyer with the three last above enumerated steps shall not constitute an admission by Seller of the merits or amount of Buyer's said claim."

The defendant did not refuse to pay for said 10 barrels of flour because of its condition or quality. On the contrary he paid the plaintiff in full for the same, but never thereafter ordered out any more flour on said contract. Defendant's contention here is not for reclamation or damages for bad flour shipped him, but his insistence is the plaintiff had breached the contract in such way as to indicate or show that it was not its purpose to carry the same out according to its letter and spirit.

Whether or not the plaintiff, under the evidence, was entitled to recover under count five of the complaint was a question for the jury. Under the contract the plaintiff could not furnish defendant unwholesome flour, or flour unfit for human consumption, and if the plaintiff did furnish the defendant unwholesome flour under such circumstances as to justify the purchaser in assuming that it would continue to do so, under the contract (which was a question for the jury), the purchaser would be justified in treating the contract as bro-

ken by plaintiff. Uniform Sales' Act, General Acts 1931, p. 570, Section 45(2); Johnson & Thornton v. Allen & Jenkins, 78 Ala. 387, 56 Am.Rep. 34.

Plaintiff was not, therefore, entitled to the general affirmative charge as to said count five, and as heretofore indicated, it was not entitled to recover under count four, which was based on the July 7, 1937, contract.

The plaintiff was not entitled to have the jury instructed in the terms of any of its refused charges here argued.

We have considered all questions presented on the record, and here argued by appellant, and find no reversible errors. The assignments of error with reference to admission of evidence relate to questions propounded to plaintiff. We find no such questions in the record.

Finding no reversible errors in the record, it follows that the judgment appealed from must be affirmed. So ordered.

Affirmed.

ANDERSON, C. J., and THOMAS and BROWN, JJ., concur.