16 So.2d 866

**SCOTT v. McGILL et al.**

**7 Div. 773.**

Supreme Court of Alabama.

Feb. 24, 1944.

Embry & Weaver, of Pell City, for appellant.

W. T. Starnes, of Pell City, for appellees.

258

BOULDIN, Justice.

This cause was here on appeal from a decree on demurrer to the bill as amended. The decision then rendered discloses the several aspects of the bill. See Scott v. Scott, 242 Ala. 361, 6 So.2d 476.

The present appeal is from a final decree on pleadings and proof denying complainant relief and dismissing the bill.

The principal issue in the case relates to that aspect of the bill seeking to exercise an option to avoid a deed to lands upon the alleged ground that a material part of the consideration was an agreement on the part of grantees to support the grantor during life. Code, Title 20, § 15.

The bill was filed by or in the name of the grantor in his lifetime. He died pending the former appeal, and the cause was revived in the name of H. E. Scott, administrator, etc., known in the record as Hosmer Scott, a son of decedent.

The deed carries no reference to any agreement to support the grantor. The recited consideration was $750 cash in hand paid, receipt acknowledged. Following the description of the property is this recital: "The grantee assumes a mortgage due Dr. W. A. Beason, which he now holds against said lands, situated in St. Clair County, Alabama." This mortgage had been executed by W. R. Scott and others some six weeks before making the deed in question and was to secure an indebtedness of $1,125, no part of which had become due when the deed was made. The deed carried full covenants of warranty, reserving a life estate with right of possession and all rents, income or profits during the life of the grantor.

Parol evidence alone was offered touching an agreement to support the grantor. This line of testimony tends to alter, contradict and modify the terms of the deed, to write into the deed a stipulation, which the statute in turn writes into a condition, converting an absolute estate on the face of the deed into a defeasible estate determinable at the option of the grantor by a proceeding in equity begun in his lifetime. A wide latitude in the admission of parol evidence touching the real consideration for a conveyance of lands is recognized in the law, but there are well-recognized limitations on such rule.

These limitations are well stated in the text of Corpus Juris Secundum, from which we quote: "Where the effect of parol evidence contradicting the consideration expressed in the instrument or showing the true consideration to be different therefrom would be to change or defeat the legal operation and effect of the instrument, or to add new matter to an agreement complete on its face, the evidence is not admissible; for in such case it comes within the rule which forbids the introduction of parol evidence to vary, contradict, or defeat a written instrument and not within the exception to that rule that parol evidence is admissible for the purpose of contradicting or showing that the true consideration is other than, and different from, that expressed in the writing." 32 C.J.S., Evidence, p. 887, § 956 (a).

Again: "Where the statement in a written instrument as to the consideration is more than a mere statement of fact or acknowledgment of payment of a money consideration, and is of a * * * contractual nature, as where the consideration consists of a specific and direct promise by one of the parties to do certain things, this part of the contract can no more be changed or modified by parol or extrinsic evidence than any other part, for a party has the right to make the consideration of his agreement of the essence of the contract, and when this is done the provision as to the consideration for the contract must stand on the same plane as the other provisions of the contract with reference to conclusiveness and immunity from attack by parol or extrinsic evidence. For the same reason, where the writing is complete on its face, an additional executory consideration cannot be shown by parol, or, as it is sometimes expressed, new terms cannot be engrafted into an agreement by parol under the guise of varying the consideration. * * *" 32 C.J.S., Evidence, p. 889, § 958.

These principles are fully recognized in our own cases. Baker v. Horsley, 212 Ala. 181, 101 So. 830; Able v. Gunter, 174 Ala. 389, 57 So. 464; Higdon v. Leggett, 208 Ala. 352, 94 So. 359; Corley v. Vizard, 203 Ala. 564, 84 So. 299; Pique v. Arendale, 71 Ala. 91; Schwab v. Powers, 228 Ala. 205, 153 So. 423.

These rules designed to preserve the sanctity of written memorials of transactions as against the frailty of human memory, and especially the security of ti-

tles to lands, are presumed to be respected by lawmakers in framing legislative acts.

However, our statute, Title 20, § 15, inserts an express clause protecting innocent purchasers from the grantee as against the option of the grantor to revoke the deed. There could be no innocent purchaser if the consideration named in the statute appeared on the face of the chain of title. The innocent purchaser clause would be meaningless, unless the agreement to support be in a separate, contemporaneous agreement, part of the same transaction, and not put to record. Objection was made in the instant case to the oral testimony on the ground that it varied and contradicted the deed. Such objections were not noted in the submission. Appellant argues the objections cannot be considered under the rule which obtained from the effective date of the Code until the recent act re-instating the former rule requiring the court to consider only legal evidence, notwithstanding no objection was interposed or noted. We find the notes of testimony on submission of the instant case were filed subsequent to the new statute approved June 8, 1943, Acts of 1943, p. 105. This case is, therefore, governed by this new statute.

█ The trial court made no ruling on the evidence considered by him. To sustain his decree, this court may assume he considered only legal evidence.

If deemed necessary to a decision, this court could and should now determine whether parol evidence was admissible in the premises. The question is not free from difficulty. On the former appeal this court sustained this aspect of the bill, although not directly involved, and so far as appears, the question now under discussion was not dealt with. Neither is it now argued elaborately. We, therefore, leave the admissibility of such parol evidence open for fuller consideration, and confine ourselves to the measure of proof required to stamp this conveyance as one within the statute, Title 20, § 15.

█ By all the sound analogies of the law, as in cases where parol testimony is relied upon to declare an absolute deed a mortgage, or when reformation is sought, we hold parol testimony working a complete change of the nature of the estate shown on the face of the deed should be clear, satisfactory, and convincing. Sew-ell v. Price's Adm'r, 32 Ala. 97; 32 C.J.S., Evidence, § 1023, p. 1060.

This brings us to another question, viz: the competency of witnesses to testify touching transactions with the deceased person whose estate is interested in the suit.

The deed was executed in November, 1934. It was executed by W. R. Scott to his son, Travis Scott, and his wife, Ethel Scott; conveyed some nine to ten acres of valuable farm lands and forty acres of timber lands. The grantor, then some seventy-four years of age, was residing thereon. After the death of his wife, Travis and Ethel moved in and lived with him, beginning in 1933. After the execution of the deed they continued so to live until the latter part of 1936, when the father moved off and took up his residence with a daughter. Soon thereafter Travis and Ethel removed to Birmingham. They separated. A divorce suit followed in which Ethel was granted a divorce, and by decree of the court all the right, title and interest of Travis in this property was divested and vested in Ethel as alimony.

This was in 1938. Thus matters stood, the father holding under his life estate, until 1940. Meantime, Travis was in contact with his brother, Hosmer Scott, residing in Maryland.

In April, 1940, Hosmer came to Alabama, received a power of attorney from his father, expressly empowering such attorney to institute a suit of this kind on behalf of the father, and this suit was begun a few days later.

█ Travis Scott and Ethel Scott were both made parties respondent. At the time the evidence was taken, Travis's pecuniary interest was solely as heir-at-law of his father. His interest was with the complainant, and adverse to the interest of his co-respondent. Accordingly, he filed an answer, signed in person, admitting all the allegations of the bill. It follows, he and Ethel were both incompetent as witnesses to the original transaction, the consideration for this deed. The same rule applies to the other heirs. Mr. McGill, a competent witness, testified nothing was said about support when the deed was drawn and executed.

█ Travis, again in his own name, filed statutory interrogatories to his father, eliciting answers in general terms support-

ing the averments of the bill. He was not an adversary party in interest. His entire attitude in the case was with the complainant. Ethel was the adverse party, the sole adverse party in real interest. Equity Rule 39 (a) (e), Code 1940, Tit. 7 Appendix, authorizing interrogatories to be filed by a party by way of discovery, the answers to be offered in evidence by the party filing the interrogatories at his election, does not contemplate nor sanction making persons parties respondent who have no interest, or common interest with the complainant, the filing of interrogatories by such party respondent to complainant and introduction of the answers as against the real party respondent who had no part in filing such interrogatories.

Upon careful consideration of the entire picture, including other provisions the grantor had made for his support along with the rents and income accruing from his life estate, we conclude the evidence does not measure up to the Standard essential to sustain this aspect of the bill.

Relief being properly denied on the aspect of the bill above considered, it follows, as of course, relief was properly denied seeking to redeem from or take over the outstanding mortgage mentioned in the deed, and now held by respondent McGill, father of Ethel Scott. This for the reason that W. R. Scott had parted with his equity of redemption by the deed to Travis and Ethel Scott, and the equity of redemption at time of suit filed was and now is in Ethel Scott.

The validity of the mortgage is not questioned. It seems some impression prevailed that this was the mortgage of the grantees, in the deed, and not being in the hands of a bona fide holder, was subject to the right of the grantor to revoke the deed. In fact the mortgage was given by the grantor, outstanding when the deed was made, as disclosed by the deed.

All parties agree the recited consideration of $750 was never intended to be paid in addition to the mortgage debt; and alleged obligation to support.

No assignment of error challenges the decree in denying relief on the aspect of the bill seeking to enforce a vendor's lien for this $750.

Affirmed.

GARDNER, C. J., and FOSTER and STAKELY, JJ., concur.