22 So.2d 733

**NATIONAL UNION FIRE INS. CO. v. WEATHERWAX & GENTRY et al.**

8 Div. 279.

Supreme Court of Alabama.

June 7, 1945.

Rehearing Denied July 26, 1945.

[1] Ante, p. 113.

H. A. Entrekin, of Cullman, for appellant.

R. L. Almon and Thos. C. Pettus, both of Moulton, for appellees.

GARDNER, Chief Justice.

The National Union Fire Insurance Company brought suit originally on the law side of the docket against Weatherwax & Gentry, a partnership, and the individual members of the firm, J. L. Weatherwax and L. W. Gentry, seeking a recovery of $1,065.83 due by account. Subsequently, upon the theory the accounts were complicated, the cause was removed to the equity docket, and a bill filed by the company seeking the same amount in the accounting.

The basis of the accounting was a contract of employment, or what may more properly be termed an agency contract, wherein these defendants were to represent the fire insurance company in Lawrence County in writing farm insurance. In this written contract was a provision reading as follows:

"That I will return to the company all unearned commissions on policies cancelled pro rata, or otherwise. * * *"

In another paragraph of the contract is the following stipulation:

"I agree that any or all contracts or agreements (either written or verbal) between the parties named herein, existing prior to this date shall be and are hereby terminated, and that no benefits shall hereafter accrue to me thereunder.

"And I further agree that my employment by the National Union Fire Insurance Company as solicitor may be terminated by said company at any time, and nothing herein contained shall be construed to the contrary."

For the faithful performance of the contract an agency bond was executed which has in it the following clause:

"* * * And shall also pay over the returned commissions upon any and all policies of the said company which, for any cause may be cancelled at any time whether such policies were actually written by J. L. Weatherwax and L. W. Gentry, agents, or their predecessors."

The bond and contract appear to have been executed as far back as 1928. The negotiations for the execution of these instruments were carried on by one Moorman, agent of the fire insurance company, who died many years prior to the institution of this suit. In the course of time the insurance company decided to withdraw

from the State, and cancelled all outstanding policies written by these defendants, returning to the policy holders the unearned premiums. The defense rested in large part, if not entirely upon what defendants insist were misrepresentations on the part of Moorman in the execution of the agency contract and the agency bond, each testifying concerning the conversations with Moorman. They insist that Moorman, in discussing with them the clauses in the contract and bond above noted, stated there would be liability for return of commissions on policies cancelled only in those instances where the policy was cancelled on account of the premium not being paid at the expiration of sixty days from the due date of the notes given therefor, or, in those instances in which the policies were cancelled on recommendation of the defendants themselves; that no others would be cancelled and no items charged back to the defendants.

These defendants were intelligent business men engaged in the banking business. They read the instruments executed, and there was some hesitancy about signing on account of the provisions in Paragraph 9 of the contract, which have been hereinabove set out. Notwithstanding the broad language of the contract, they executed these instruments, apparently resting content with the assurance of the agent there would be no wholesale cancellations and no liability except in the two instances mentioned.

In view of the fact there was no misrepresentation as to the contents of the instrument, counsel for complainant insist that the plain language of the contract must control, and that the case is one which prohibits a written contract from being contradicted by parol. Griffin v. Tatum Chev. Co., 231 Ala. 534, 166 So. 49; Miller Bros. v. Direct Lumber Co., 207 Ala. 338, 92 So. 473; Stephenson Brick Co. v. Bessemer Engineering Co., 218 Ala. 325, 118 So. 570; Scott v. McGill, 245 Ala. 256, 16 So.2d 866; Jackson v. Sample, 234 Ala. 75, 173 So. 510; General Mills v. O'Rear, 239 Ala. 270, 194 So. 823; W. T. Rawleigh Co. v. Cone, 232 Ala. 127, 167 So. 274; Jones v. Tenn. Land Co., 234 Ala. 25, 173 So. 233.

■ Counsel also insist that the evidence of these defendants was inadmissible by virtue of the express language of the statute, as it related to a conversation, transaction, or a statement by, the deceased agent, who at the time was acting in a representative or fiduciary relation to the party against whom such testimony was sought to be introduced. That the testimony in regard to these statements by the deceased agent Moorman was inadmissible under our statute requires no citation other than the statute itself. Title 7, Sec. 433, Code 1940.

The trial judge expressed, in the opinion accompanying the decree, his view that the complainant's objections were well taken, and that this testimony would have to be excluded had proper and timely objection been made thereto. Giving effect to what he conceived to be evidence to which no proper objections were interposed, the trial judge denied relief and dismissed the bill, and from this final decree the appeal is prosecuted.

■■ The record is rather voluminous, and we are impressed that the learned trial judge, as well as counsel for the defendants, overlooked the agreement of the parties concerning this very matter of interposing objections to testimony. The testimony was taken before a commissioner, as provided by Sec. 475, Title 7, Code 1940, and Equity Rule 55, Title 7 Appendix, Code 1940. In Paragraph (7) of the latter rule it is expressly provided that the officer taking the examination may state to the court any special matters he may think fit. And the recent case of Gaines v. Harmon, Ala., 20 So.2d 503,[1] illustrates that parties may depart from strict regularity in such matters by oral agreement before the commissioner. The commissioner is an officer of the court, and as stated in the Harmon case, supra, an officer is presumed to act in good faith.

Just following the signature of defendant Gentry to his testimony, we find on page 120 of the transcript the following:

"Agreement

"It is agreed by and between the parties that any party, at a later date, may point out and make any objections to the testimony of any part of the testimony this day taken. * * * The taking of the deposition of L. W. Gentry and J. L. Weatherwax was continued from June 18, 1940 by agreement of the solicitors from time to time down to July 19, 1940."

---

[1] 246 Ala. 307.

And on page 144, at the beginning of the testimony of J. L. Weatherwax, is the following:

"It is agreed between counsel for complainant and respondents that objections may be assigned in writing at any time before submission."

And at the bottom of page 152 is the further stipulation by the commissioner:

"It is agreed that the commissioner may sign the witness name to the testimony when transcribed."

No challenge is here made that the record in these respects does not speak the truth. And so considered, no reason appears why these stipulations as thus recorded should not be given full force and effect. We think it may be properly said to be a matter of common knowledge that agreements of this character are often entered into by counsel when testimony is taken before a commissioner who takes the testimony down in shorthand; and in order to expedite the matter of taking the testimony counsel agree before the commissioner that objections to testimony need not then be made but may later be presented. In accordance with this agreement, and in strict compliance therewith, it appears counsel for complainant interposed in writing objections to the testimony of these defendants, particularly in regard to statements by the agent, Moorman, deceased, as in violation of our statute; and these objections, as well as the agreement in regard thereto, were incorporated in the note of testimony. See pages 53 and 67 of the transcript.

We have stated that the defense was rested upon this objectionable testimony, in large part if not in its entirety. We have not overlooked the testimony of the witness Ike Terry, who claims to have heard some of the conversation. But the sum and substance of this testimony reduced to the last analysis is, we think, contained in the following two sentences: "I didn't read the contract. But I do remember this party telling Mr. Weatherwax there was no liability on his part whatsoever, and that this was one of the most reliable companies in the country." Certainly no decree in favor of the defendants could be rested upon any such statement, which in part at least, was in direct conflict with the terms of the agency contract and bond.

Perhaps in a sense this is a hard case, as the contract and bond contain what appear to be some very stringent requirements. But we cannot remake the contract for the parties, nor can we disregard the plain mandate of our statute.

It results, therefore, from our view of the case, the defense thus far interposed has wholly failed. The decree will accordingly be here reversed and the cause remanded.

Reversed and remanded.

All the Justices concur.