36 So.2d 300

### HUGHES v. DUKE.

#### 4 Div. 479.

Supreme Court of Alabama.

May 13, 1948.

Rehearing Denied July 31, 1948.

Ralph A. Clark, of Andalusia, and Lightfoot & Bricken, of Luverne, for appellee.

Sentell & Sentell, of Luverne, and E. O. Baldwin, of Andalusia, for appellant.

BROWN, Justice.

Courts of equity look through form to substance and mold their decrees to protect the rights and equities of the parties. Midgely v. Ralls, 234 Ala. 685, 176 So. 799; Andress v. Parish, 239 Ala. 67, 193 So. 727; Saenger Theatres Corp. v. McDermott, 239 Ala. 629, 196 So. 265; 8 Alabama Digest, ☞56, p. 440. On the face of the pleadings as last amended it appears, at first blush, that this litigation is between mother and daughter in which the mother is the aggressor, but when we get to the heart of the litigation it clearly appears that John R. Duke, the son, is the dominant spirit behind the litigation.

Some of the major facts disclosing the interests and activities of the parties are, appellee, a widow of advanced age, has four children, a son John and three daughters, the appellant Zonnie Straughn, Mrs. Bozeman and Minnie Straughn, all married

or have been married and have families. A short time before the execution of the deed on October 17, 1942, the appellant, a widow, and a trained nurse, had employment in the State of Ohio and was receiving $150.00 per month and her maintenance. The appellee at that time owned two farms and two dwelling houses. One of said farms consisted of a tract of one hundred acres of land situated in Crenshaw County near Searight where appellee lived and now lives in one of said dwelling houses located on Lot No. 16 according to the plat and survey of the Town of Searight. This village is located near or on the line between Crenshaw and Covington Counties. The other house is located on Lot No. 10 in Searight. The other tract of land, consisting of 54-½ acres, is in Covington County. Prior to October 17, 1942, appellee conducted farming operations on both of said tracts of land and the income from said farms and rental of the house on Lot No. 10 and a pension of $45.00 per month which she received from the government was the source of appellee's income.

The appellant had no income other than that received from her labor and work as a nurse. The appellee became ill, lived alone and requested appellant by letter to give up her position and come to Searight and nurse and care for appellee. This appellant undertook to do and soon thereafter with the concurrence of the other children, other than John, the appellee executed a warranty deed to appellant, conveying to her all of said lands, reciting a consideration of $1.00 and other good and valuable considerations. The following parenthetical clause, "It is hereby agreed and understood that, as a part of the consideration hereof the grantee is to care for, maintain and support the grantor herein during her natural life * * *" was embraced in the description of the land. The deed was delivered, filed and entered of record in the appropriate offices of both counties soon after its execution and at the time of its execution and delivery the appellant had entered upon the performance of this obligation and continued to look after the two plantations, care for her mother, using the income from said plantations and said pension for the maintenance

of the mother and herself in the home located on said Lot 16. This continued for 14 months, when according to her testimony appellant arranged to go on a short vacation of two months with the intention of returning. After she arrived in Ohio where she had formerly worked and lived, she received a letter written by someone, not the mother but signed by the mother, telling her not to return. According to the testimony of the mother the letter told her to return and get her things as she knew more about what was hers in the house than anybody else.

On the day of appellant's departure the son John and his wife moved into the home with the mother and took over appellant's tasks. On the day before the appellant started on said trip, the mother executed and delivered to her a warranty deed, embracing said Lot No. 10 and the 54½ acres of land lying in Covington county. This deed was filed for record in the Probate Office of Crenshaw County on the 30th of October, 1943, and on the 26th day of September, 1944, in Covington County.

The orginal bill in this case was filed on January 20, 1946, by appellee and John R. Duke against the appellant seeking the cancellation of the two above mentioned deeds, the first on the ground that the appellant Zonnie Straughn "has failed or refused to carry out the terms of this conveyance and care for, maintain and support the said Mrs. E. L. Duke; that since October 1943 Mrs. Zonnie Straughn has rendered no service or support to the said Mrs. E. L. Duke and she has not paid any consideration for the real estate described and conveyed to her." And for the cancellation of the other deed above mentioned on the ground that it was executed without consideration and was obtained by misrepresentation as to the true contents of the same.

The original bill alleged, inter alia, "* * * that on July 28th, 1944, your complainant, Mrs. E. L. Duke, conveyed the real estate described in the conveyance (the 54½ acres) referred to in paragraph four hereof, to your complainant John R. Duke and he now owns the same." An amendment to this bill filed on February

15, 1946, struck John R. Duke as a party complainant and paragraphs 3 and 4, substituting therefor allegations, in substance, that the first mentioned deed was executed by the complainant to the defendant in consideration of the promise to maintain and support complainant during her natural life; that respondent has failed and refused to support the complainant in accordance with said agreement and in October, 1943, left the complainant and returned to Ohio and since that date has rendered no service or support to the complainant and that the complainant elects to and does declare the conveyance void and files this proceeding to have the same declared null and void as provided by law.

The original bill was further amended by striking paragraph 5 and substituting other averments seeking to cancel the deed executed in October, 1943, on the ground that said second deed was without consideration and further alleging that a day or two prior to the execution of said last mentioned conveyance complainant attempted to make a division of certain real estate owned by her in the Counties of Crenshaw and Covington, being the real estate hereinbefore described in the bill. That it was her intention and agreement with her daughter that lot no. 10 in the Town of Searight, Alabama, as described in the conveyance last mentioned, was to be conveyed to her daughters Zonnie Straughn, Minnie Straughn, and Bessie Bozeman jointly and complainant was to retain a life interest in said real estate. That the 54½ acres in Covington County were to be jointly conveyed to her daughters Minnie Straughn and Zonnie Straughn and that complainant was to retain a life interest in the real estate so conveyed. That complainant and respondent consulted counsel relative to drafting such conveyances and that said counsel prepared said conveyances, the contents of which were unknown to complainant and mailed them to the defendant Zonnie Straughn in Searight, and were received by her a day or two prior to the execution of said last conveyance. That respondent examined the said conveyances and stated to the complainant that the same were improperly drafted and that they did not express the desires of the complainant, that she (respondent) would have to have other conveyances drafted in accordance with complainant's desires. That the respondent thereupon had the conveyances herein referred to and attached as Exhibit "B" to the original bill drafted and carried the said conveyances and complainant to Dozier where the same were executed. That at the time of the execution of said conveyances the complainant was advised by the respondent that the real estate was being conveyed in accordance with her wishes as hereinabove stated, to her three daughters, retaining a life interest in complainant. That complainant had confidence in the respondent and executed the conveyances in full faith in the statements and representations made to her by the respondent. That the first information or knowledge she had that the real estate was conveyed unconditionally to the respondent was in July, 1944. The bill as amended alleges, "your complainant further avers that the execution of the said conveyance was procured through the fraud, misrepresentation and misstatements of the respondent."

The bill does not allege that the deed was procured by undue influence exercised by the respondent over the complainant. It alleges or attempts to allege fraudulent representations as to the contents of the deed. To warrant cancellation for undue influence it is not necessary to allege with particularity the quo modo through which the result complained of was accomplished, but the bill must allege that the result was accomplished through the dominating influence of a particular person and that such result was the act and will of such person, and not the act of the grantor. Alexander v. Gibson, 176 Ala. 258, 57 So. 760; Coghill v. Kennedy, 119 Ala. 641, 24 So. 459; Letohatchie First Baptist Church v. Bullock, 133 Ala. 548, 32 So. 58; Roberts v. Cleveland, 222 Ala. 256, 260, 132 So. 314; Cox v. Parker et al., 212 Ala. 35, 101 So. 657; Jackson v. Rowell, 87 Ala. 685, 6 So. 95, 4 L.R.A. 637.

Proof without allegation is as fatal as allegation without proof. McDonald v.

Mobile Life Ins. Co., 56 Ala. 468, 470; Mountain Brook Estates, Inc. **v.** Solomon, 247 Ala. 157, 163, 23 So.2d 1.

The defendant demurred to the bill as amended assigning among other special grounds that "Said bill of complaint, as last amended, avers that the said deed attached thereto and marked 'Exhibit B' was procured through fraud, misrepresentation, and misstatements of the defendant, but fails to show or aver of what such fraud, misrepresentations and misstatements, as alleged, consisted." The demurrer was overruled.

The respondent answered, admitting in its major aspects the averments of the bill as amended as to the first deed, setting up affirmative matter to the effect that the defendant in order to accept the employment and perform the terms of said contract resigned her position in the State of Ohio, came to Alabama and assumed the care and maintenance of complainant and did all that she could for complainant who was in poor health at the time, nursed her and continually administered to her needs and wants after complainant's other children had refused to look after, care for and administer to her needs and wants, and continued to render such services for the complainant until October, 1943, when it became necessary for the defendant to go to the State of Ohio to look after some business, with the full intention of returning and looking after her mother, but a short time after she arrived in Ohio, complainant wrote and told her not to return to Alabama. She denies that "no part of the consideration for the lands conveyed to her and described in the original bill of complaint was paid, but alleges that she did in the way of work and money, pay to complainant the amount of, to-wit: $1400.00 or more, the full value of said property, and that in equity and good conscience, complainant should be estopped from denying the validity of said deed for she held herself in readiness and willing to carry the terms thereof."

As to the second deed, the answer admits its execution and recordation but denies that said conveyance was without consideration and alleges that she had "in the way of work and labor, in caring for,

nursing, and administering to the needs and wants of complainant, and the giving up of her job in the State of Ohio, in order that she might administer to, maintain, and support complainant, amounted to more than the value of said lands, * * * and that this was 'the other and further good and valuable considerations' as recited in said deed; that complainant herself suggested and proposed the execution of said deed, as attached to the original bill and marked 'Exhibit B', that defendant knew nothing of any attempted or proposed division of the real estate described in said deed among any of the complainant's children just prior to the execution of said deed, or that it was to be conveyed jointly to complainant's daughters Minnie Straughn and the defendant, nor that complainant was to retain a life interest in the lands so conveyed. * * * that complainant suggested the conveyance of said lands to defendant and complainant stated to defendant that because of her treatment, what she had done for complainant, that defendant was entitled to the property and that complainant wanted to convey to defendant said real estate so that she would not be molested by her other children who had refused to do anything for complainant; that complainant suggested that the defendant consult a lawyer, have him draft the deed conveying the lands to defendant outright; that complainant and defendant went to Andalusia, discussed the conveyances with the attorney, the consideration therefor, and all the circumstances connected therewith; that after discussing the matter with said attorney, he stated he could not prepare the deed at that time, as he was tied up with some other matters, but when complainant had fully explained her desires with reference to the execution of said deed, as attached to the original bill of complaint, marked 'Exhibit B', but he would prepare the deed, send the same to complainant and defendant, and that they could carry it to Dozier, Alabama, and that complainant could go before a Notary Public there and execute the same; that a short time thereafter, complainant and defendant did receive said deed from said attorney, complainant read and fully understood the deed, and after doing so, com-

plainant" accompanied defendant to the Notary Public at Dozier where the deed was "duly executed and delivered to the defendant * * *."

The defendant prayed that her answer be made a cross-bill, and the value of her work and labor be charged against the property, and for general relief.

On submission for final decree on pleadings and proof the court observed "that the complainants are entitled to the relief prayed for in their Original Bill, as amended." Thereupon the court entered a decree cancelling the deed of date of October 17, 1942, executed by appellee Mrs. E. L. Duke to the appellant and the deed executed by the complainant Mrs. E. L. Duke "on the —— day of October, 1945," attached to the original bill as complainant's Exhibit B declaring that both of said deeds "are null and void and of no effect." The decree directed the register to enter upon the record of said deeds in the Probate Offices of Crenshaw and Covington Counties the following notation: "This deed has been cancelled, annulled and held for naught by the decree of the Circuit Court of Crenshaw County, Alabama, in equity, of date the 26th day of June, 1947, and sign his name thereto as Register of this Court." It is from this decree that the appeal is prosecuted.

The testimony in the case was taken by deposition before commissioners agreed upon between the parties. The evidence is without dispute that the material part of the consideration of the deed executed by the appellee to the appellant on the 17th of October, 1942, was an agreement on the part of the grantee to support and maintain the grantor during her natural life. That said deed was voluntarily executed by the grantor with the consent and concurrence of her other daughters and that the appellant gave up her employment as a nurse in which she was receiving $150.00 per month and her maintenance to undertake this task. That she entered upon the performance of this contract and agreement and continued her services until October, 1943, when, according to her testimony, she went to Ohio on a vacation of two months to make a visit to her child and to look after some business with the under-

standing that John would look after the mother in her absence. Soon after she got back to her former home in Ohio she received the letter signed by her mother requesting her not to return. The evidence offered on the part of the complainant is in conflict with this phase of appellant's testimony and tends to show that respondent left Searight and stated she was not going to return. That the task which she had assumed was too onerous and she could not stand the work. The complainant also offered evidence going to show that in order to maintain her mother the respondent used the income from the property and drew on the account of the mother to maintain the home where the mother and daughter lived.

The deed of October 17, 1942, passed to the grantee, appellant, the title to the property with the present right of possession together with the right to enjoy the usufruct, income and profits accruing therefrom by the grantee and the clear purport of the agreement between the parties viewed in the light of the circumstances in which they were situated at the time of its execution clearly contemplated that such returns from the property were to be used for the purpose of maintaining the mother and daughter in their home. The evidence is without dispute that the defendant, (appellant), had no other income. The statute in such circumstances confers on the grantor an option to rescind by proceedings in equity. Code 1940, Tit. 20, § 15. Such option is a property right in real estate and the proceeding in equity is to recover or reinvest in the grantor the title and possession of the property. Heartsill et ux. v. Thompson, 245 Ala. 215, 16 So.2d 507. Complainant's bill is, therefore, essentially an equitable action of ejectment. Ex parte Barkley, 210 Ala. 466, 467, 98 So. 463.

The evidence is without dispute that after the complainant Mrs. Duke had conveyed to her daughter, the appellant, Lot No. 10 in Searight described in the bill and the 54½ acres of land situated in Covington County she, on July 28th, 1944, conveyed said Covington County tract to John R. Duke by absolute deed of warranty. It further appears that complainant

also conveyed Lot 16 on which the house was situated and the hundred acres in Crenshaw County to John R. Duke, reserving in the grantor a life estate.

The evidence is further without dispute that defendant, Zonnie Straughn, sold Lot No. 10, embraced in the second deed to her, to Welch and wife for a consideration of $800.00 in cash paid, and they were in possession of said property at the time the bill was filed. They were not made parties to this suit. Prout v. Hoge, 57 Ala. 28.

By the execution and delivery of the conveyance to the defendant in 1943, unless said deed is annulled by judicial decree for fraud, the complainant confirmed in defendant the title to said 54½ acres and Lot no. 10 in Searight and waived and lost her statutory personal option to annul the deed of date of October 17, 1942, as to said tract in Covington County and lot 10 and is not entitled to maintain that aspect of the bill which seeks to cancel the conveyance made by her to the defendant in October, 1943. Having parted with her entire property right and title to said property, complainant is estopped as against the defendant to maintain that aspect of the bill. Holder v. Taylor et al., 233 Ala. 477, 172 So. 761; Roman v. Lentz, 194 Ala. 610, 69 So. 827.

The complainant's right to cancel deed of date October, 1943, is rested solely upon the allegation of fraudulent representations of defendant as to the contents of said deed and the evidence which the complainant offered does not sustain the allegations of that aspect of the bill. The complainant testified that she could read, that she did not know the contents of the deed which she executed and that nobody made any representations to her about it. The most her testimony shows is that she assumed that the deed contained matters which in fact it did not contain, that is, that the property was to be conveyed to the three daughters.

Defendant's testimony goes to show that the complainant had full opportunity to examine the deed, that she executed it for the purpose of rewarding the defendant for the services she had rendered in the fourteen months she had remained with her.

The decree in so far as it sets aside, vacates and annuls the original deed of October 17, 1942, as to Lot No. 16 in Searight and the tract of land described in said deed as the E-½ of NW-¼ and all that portion west of muddy branch in the NW-¼ of NE-¼ of Section 30, Township 6, Range 17, and all that portion west of muddy branch in SW-¼ of SE-¼ of Section 19, Township 6, Range 17, containing in all 100 acres more or less situated, lying and being in Crenshaw County, Alabama, is due to be and is hereby affirmed.

The decree upholding the aspect of the bill which seeks to cancel, set aside, vacate, annul and hold for naught said deed as to Lot No. 10 in Searight and the 54½ acres of land located in Covington County, Alabama, as described in the bill, is reversed and a decree here entered dismissing the same. The deed of October 17, 1942, in so far as it relates to lot 10 and the 54½ acre tract in Covington County is allowed to stand as a muniment of title to the property conveyed by the complainant to the defendant by the warranty deed of October, 1943, in consideration of services rendered by the defendant to the complainant. Cornelius et al. v. Walker, 248 Ala. 154, 27 So.2d 17.

Costs of the appeal are taxed equally against appellant and appellee.

Affirmed in part and in part reversed and rendered.

All the Justices concur.