266 So.2d 871

Jack COOPER et al.

v.

James W. COOPER, Sr.

6 Div. 687.

Supreme Court of Alabama.

Sept. 21, 1972.

Charles Cleveland, Birmingham, for appellants.

Frank Bainbridge, Birmingham, for appellee, James W. Cooper, Sr.

Ira E. Tidwell, Leeds, for appellee, James W. Cooper, Jr.

COLEMAN, Justice.

Five of six respondents in a suit in equity appeal from an adverse decree rendered on their cross bill. The court ordered dissolution of a partnership and an accounting between the partners.

The record contains more than a thousand pages. We do not undertake to state or set out all the evidence. For the most part, in setting out evidence, we set out evidence which supports the findings of the register. As to many issues the testimony is in sharp conflict and the evidence would support a finding contrary to that which the register found. The conflicts in evidence presented issues to be decided by the register and his findings are to be upheld unless plainly and palpably wrong.

On October 2, 1963, the complainant filed a bill in the Circuit Court of Jefferson County, in equity, to set aside three deeds by which he and one of his children (respondent J. W. Cooper, Jr.) and their respective wives conveyed three separate parcels of realty to the six respondents. The respondents are all the children of the complainant. The bill of complaint, as amended, proceeds under Title 20, § 15, Code of Alabama 1940, and alleges that the true consideration for the deeds was an agreement by the respondents to support him for life.[1] Each of the deeds was dated

---

[1] Respondent J. W. Cooper, Jr. testified that he agreed to part with his one-half interest in parcels 1 and 2, and to accept in lieu thereof a one-sixth interest in all three parcels "to save a lawsuit." This will be further explained in the statement of the facts.

February 9, 1960. Two of them (to parcels 1 and 3) were executed by the complainant and his wife, and the third (to parcel 2) was executed by the complainant and the respondent, J. W. Cooper, Jr., and each of their wives.

Respondent J. W. Cooper, Jr. filed an answer and cross bill admitting the allegations of the bill, requested that the court determine the extent of interest in the property that each party held, and prayed that the property be sold for division. The other five respondents, hereinafter called appellants, filed an answer and cross bill denying the alleged support agreement, and averring that the monies used by the complainant in purchasing the property in controversy consisted of the earnings of each of them except Sadie and Clair, and that the conveyances from complainant and J. W. Cooper, Jr. to respondents were executed to fulfill an agreement of trust, or resulting trust. The cross bill alleged further that the complainant and respondents had operated a barbecue stand as a partnership on parcel 3 and prayed for its dissolution and an accounting thereof.

Complainant's answer to appellants' cross bill denied that the earnings of anyone other than himself and the respondent J. W. Cooper, Jr. were used in purchasing the said property, and denied the existence of a trust agreement as alleged by the cross bill.

Oral testimony was heard before the Honorable W. A. Jenkins, Jr. who rendered a final decree on July 14, 1964, denying relief to the complainant under the provisions of Title 20, § 15, Code. Pursuant to the prayers of appellants' cross bill, the decree dissolved the partnership and ordered an accounting to be stated between the partners.

Accordingly, on June 28, 1965, a reference was begun before the register, which lasted for approximately six days. His report, filed on October 31, 1967, contained essentially the following findings:

1. That complainant and respondent J. W. Cooper, Jr. paid the entire purchase price for parcels 1 and 2, and complainant paid the entire purchase price for parcel 3; and the five appellants paid nothing for them;

2. That the three parcels were not conveyed to the six children (respondents) individually, but were in fact contributed by complainant and respondent J. W. Cooper, Jr. as capital to the partnership, for which the partnership paid no consideration;

3. That the terms of the partnership were never reduced to writing, and no agreement was made between the partners as to the disposition of the realty upon dissolution of the partnership; and

4. That an undivided one-half interest to parcels 1 and 2 should be returned to respondent J. W. Cooper, Jr., and an undivided one-half interest to parcels 1 and 2, and all of parcel 3, should be returned to complainant.

The five appellants filed exceptions to the register's report, contending basically that the register misinterpreted the directions given to him by the 1964 decree and, in effect, reversed the decree. These exceptions were overruled on November 4, 1968, by decree rendered by the Honorable W. C. Barber, who succeeded Judge Jenkins. The decree ratified and affirmed the findings of the register, divested from the appellants all the right, title, and interest held by them in and to the three parcels of realty, and ordered the register to convey the property to the complainant and respondent J. W. Cooper, Jr.

Appellants appeal from the decree of November 4, 1968.

Reduced to its essence, the controversy is this: A decree of the circuit court, in equity, denied complainant's prayer to set aside certain deeds by which he and respondent J. W. Cooper, Jr. had conveyed property to the six respondents, and dis-

missed his bill; the same decree determined that the five appellants, whose cross bill alleged the existence of a partnership operating a restaurant on one of the parcels in controversy, were entitled to their prayer for a dissolution of the said partnership and for an accounting thereof. The register's report of reference, however, found that complainant and respondent J. W. Cooper, Jr. had not made the grants to the six respondents individually but that complainant and J. W. Cooper, Jr. had contributed said property to the partnership (being composed of the complainant and the six respondents), and that complainant and J. W. Cooper, Jr. were entitled to have the property returned to them upon dissolution of the partnership. This finding was confirmed and adopted by a subsequent decree of the circuit court. The appellants' basic contention, therefore, is that the report of the register, in effect, reversed the original decree of the circuit court by setting aside the deeds in controversy, and that it was error for the November 4, 1968, decree to ratify and confirm the report.

In brief, counsel for appellants argue that the only partnership alleged in the pleadings was the one which "operated" the barbecue stand (which they contend had its inception date in October, 1961, when the restaurant opened for business) and that the register was restricted in his inquiry and consideration to the period during which the partnership existed. Thus, they conclude, it was improper for the register to go behind the alleged inception date and include in the accounting any earlier transactions involving real estate, and that it was equally improper for a subsequent decree of the circuit court to ratify and affirm such action.

The evidence tends to show that about July, 1950, complainant leased and began operating a service station situated on parcel 3, and that at this early date there was already in existence a loose partnership agreement or understanding between and among the complainant and the respondents. The terms and objectives of the partnership were never reduced to writing, and no agreement was made as to the division of partnership profits or assets, except for the general understanding that the family would be provided for from the proceeds of the partnership business. Respondents ranged in age at this time from six to twenty-one years; some assisted the complainant in operating the service station, and all received benefits from it.

By deed dated October 13, 1950, parcel 2 was conveyed to complainant and respondent J. W. Cooper, Jr. Complainant testified that the purchase price was $3,500.00 and that he paid approximately $1,750.00 and J. W. Cooper, Jr. paid the balance. Complainant testified that he and J. W. Cooper, Jr. paid the entire purchase price for parcel 2 and the other children paid nothing. J. W. Cooper, Jr. was serving the U. S. Navy and sent money home by an allotment.

By deed dated May 18, 1954, parcel 1 was conveyed to complainant for $1,320.00. Complainant testified that J. W. Cooper, Jr. paid $925.00, that complainant paid the balance with his own money, and that he got none of this money from his children.

By deed dated January 22, 1958, parcel 3 was conveyed to complainant. He agreed to pay $6,000.00 for this parcel. He testified that he had paid $2,141.15 of his own money and owed a balance of ". . . . three thousand some odd dollars."

Conflicts appear in the testimony with respect to the payments for the three parcels of land.

Ultimately the complainant and the four male respondents constructed buildings on parcels 1 and 2, hereinafter referred to as the mall property, and in May, 1959, agreed to lease the property for a period of 50 years. Rent proceeds were collected by an agent who thereupon made checks payable to complainant and respondent J. W. Cooper, Jr. and their wives. By agreement these checks were endorsed and de-

posited in a bank account in the name of "Cooper Brothers," on which four of the respondents could write checks. Neither the complainant nor respondent J. W. Cooper, Jr. were entitled by the agreement to write checks on this account. By further agreement, the funds in this account were to be used (1) for family emergencies and for the respondents' educations, and (2) for paying off the mortgage on parcel 3.[2]

In January, 1960, at the request of some of the respondents, a meeting was held at the service station which resulted in an agreement by complainant and respondent J. W. Cooper, Jr. to convey their respective interests in the three parcels of land to the six respondents. The transfers of legal title were effected by three deeds on February 9, 1960. The testimony regarding precisely what inspired the decision to make the said transfers is in sharp conflict, two separate contentions being advanced to explain it. First, the appellants attempted to show that their father, complainant, had entered into a bigamous marriage some years earlier which had produced two illegitimate children, and that they did not wish to risk thereby a dilution of their rightful inheritance. This argument was apparently rejected by the trial court. Second, the complainant attempted to show that respondents agreed, in consideration for the transfers, to construct a barbecue stand on parcel 3 (where the service station stood) and to help him operate it; that he (complainant) was to operate and manage the barbecue stand with their help for approximately one to one and a half years and thereafter be retired; and that he and Mrs. Cooper were to be supported for life from the proceeds of the barbecue stand and the mall property lease.

Each of the three deeds was absolute in terms, making no mention of the support agreement, but instead recited a consid-

eration of "($10.00) and other good and valuable consideration." Testimony touching this point tends to show that respondents, fearing a recitation of a support agreement in the deeds would hamper future efforts to secure loans on them, instructed the attorney handling the transaction to omit reference to the agreement.

Construction on the barbecue stand was begun in the Fall of 1960 and was completed in October, 1961. The service station, which had continued in operation up until that time, was torn down and the barbecue stand was opened for business. For a while, complainant managed the business and each of the respondents (with the exception of Clair) helped on occasion and when they were not occupied with their permanent jobs, but by February, 1963, each of them had ceased to help complainant because of unsatisfactory profits from the barbecue stand, or because of personal problems which arose in the family, and which are not relevant to this inquiry.

Subsequent claims to exclusive ownership of the land by respondents and threats to have the said property sold and the proceeds divided among the six respondents apparently prompted complainant to file the present bill praying for a cancellation of the deeds.

The basic issue to be resolved on this appeal is whether the decree of November 4, 1968, being based on the register's report of reference, overruled the decree of July 14, 1964. It can be reduced to two separate inquiries: (1) Whether the register misunderstood the original decree and thereby exceeded his lawful authority, and (2) whether, if the register properly construed the order of reference, there was plain and palpable error in his report of reference.

2. Complainant had purchased parcel 3 from his lessor in January, 1959, agreeing to pay $6,000.00 therefor. By the time this action was begun, he had conveyed to his grantor, as part considera-

tion, two cemetery lots and had allowed credits at the service station, valued together at about $2,000.00. Thus, at the time of this action about $4,000.00 was remaining due the grantor for parcel 3.

In regard to the first issue, if the register, by error or design, makes findings which are not within the terms of objects of the order of reference, such findings should be disregarded. Abney v. Abney, 182 Ala. 213, 62 So. 64.

In Tilley's "Alabama Equity Pleading," 1954, page 150, *Abney* is cited as authority for the following statement:

" . . . . The decree definitely defines the scope of the reference and a variance from its terms is properly disregarded."

In the decree of July 14, 1964, the trial judge denied relief to the complainant under the provisions of Title 20, § 15, but found that " . . . . the cross-complainants are entitled to the relief prayed for in their cross-bill; and that the partnership operating under the name of Cooper Brothers, composed of the complainant and all respondents, should be dissolved." Accordingly, he dissolved the partnership, and ordered simply that the cause be " . . . . referred to the Register for an accounting to be stated between the partners thereof."

As previously noted, the appellants contend that the decree contemplated an accounting only of the partnership which "operated" the barbecue stand, and that it did not authorize the register to go behind the date the barbecue stand opened and consider transactions involving real estate.

In the 1964 decree the court made no ruling on what constituted the inception date of the partnership. His decree acknowledged only the existence of a partnership "operating under the name of Cooper Brothers," being composed of the complainant and all the respondents.

The evidence supports a finding that the partnership existed prior to 1961. For example, the respondent Sadie Cooper Margado testified that the partnership was first formed in approximately October, 1961; but on further cross examination she testified as follows:

"Q You went to college in what year?

"A '52.

"Q '52, and then you started getting the money out of the partnership or the arrangement you had, or whatever it was?

"A Yes.

" . . . . . . . .

"Q You say you have put time and work into the partnership since 1950, is that the year?

"A I will say since 1950."

J. W. Cooper, Jr. testified:

"Q (BY MR. BAINBRIDGE:) Your father and brothers and sisters worked in the filling station before he purchased it, is that right?

"A That's correct.

"Q And whatever partnership agreement existed then, has that ever been changed?

"A No, not to my knowledge.

"Q So, you were all partners in operating the filling station?

"A That's correct.

"Q You were all partners at the time the filling station was torn down?

"A That's right.

"Q You all continued to be partners after the filling station was torn down and when the barbecue stand was built?

"A That's right.

"Q And you continued to be partners until the decree of Court rendered the termination of the partnership?

"A Yes."

■ In the decree of 1964, ordering the reference, the court did not determine the date on which the partnership came into existence. As shown above, there is testimony that a partnership between these same parties existed prior to 1961. Where a partnership has been proven to exist, its existence will be presumed to continue until a dissolution is proved. Guin v. Grasselli Chemical Co., 197 Ala. 117, 72 So. 413.

In Harris v. Magee, 3 Call (7 Va.) 433, the trial court had referred the account between the parties to a commissioner who reported back to the court. The court dismissed the bill. On appeal by complainant, the Court of Appeals of Virginia reversed, saying:

" . . . . the order of reference to the Commissioner embraces all accounts between the parties, yet the Commissioner has only settled the accounts relative to the deed of trust; whereas he ought, agreeably to the order of reference, to have settled all accounts between them . . . . " (3 Call at 436.)

Equity Rule 79(e) provides in part that the register has authority—

"1. To examine the parties on oath as to all the items of reference."

■ The instant cause was referred to the register " . . . . for an accounting to be stated between the partners thereof . . . . " We are of opinion that this order is sufficiently broad to cover all items of account from the beginning to the dissolution of the partnership. Those partnership transactions which occurred prior to 1961 were within the terms of the order of reference and properly considered by the register and the trial court.

Having concluded that the register properly considered transactions occurring prior to October, 1961, we turn to the sec-ond issue, to wit, whether the findings of the register are plainly and palpably wrong.

We examine first the register's conclusion that complainant and respondent J. W. Cooper, Jr. purchased the three parcels of land in controversy and owned them individually. Objections to this conclusion are embraced in assignments of error 1, 2, and 3.

■ Prima facie the status of real property is precisely as indicated by the muniment of title. Goldthwaite v. Janney, 102 Ala. 431, 15 So. 560; McKleroy v. Musgrove, 203 Ala. 603, 84 So. 280; McGowin v. Robinson, 251 Ala. 690, 39 So.2d 237. Upon initial acquisition of the land in controversy, title was placed in the names of complainant and respondent J. W. Cooper, Jr. individually. The presumption of individual ownership by them could be overcome only by clear and convincing evidence of a contrary intent.[3] We are not persuaded that the register was plainly in error in concluding that the evidence presented was insufficient to overcome this presumption.

■ The register's conclusion that the February 9, 1960, deeds conveying the three parcels of realty to the six respondents was, in fact, a contribution of capital to the partnership is more difficult to resolve. Objections to this finding are embraced in assignment of error 4. The execution of the deeds in question placed legal title to the property in the names of the respondents individually. This, again, raised a presumption of individual ownership in them. McKleroy v. Musgrove, supra; McGowin v. Robinson, supra. But equitable ownership depends upon the intention of the partners to be deduced from a consideration of their conduct and course of dealings or their agreements; and, generally, in order to make land partnership property its acquisition must have been with partnership funds or on partnership

3. It should be noted here that the mere use by the partnership of property owned by one or more partners as individuals does not impress upon it the character of partnership property. McGowin v. Robinson, supra.

credit and for the uses of the partnership. Goldthwaite v. Janney, supra; McKleroy v. Musgrove, supra; McGowin v. Robinson, supra.

■ Extensive testimony was heard by the register relative to the intentions of the parties upon conveyance of the property to the respondents. It was clear that the grantors, being the absolute owners of the land in controversy, had the right to dispose of it as their pleasure, interest, or caprice might have dictated. Whatever other factors may have impelled them to make the conveyances, some evidence suggests that the complainant was induced to part with his interest by an agreement among the partners that he would be supported for life, and that this agreement was to be carried out by using the profits from the barbecue stand and the mall lease. Obviously, the property was used for partnership purposes both before and after the deeds were executed. The register concluded that the evidence was sufficient to overcome the presumption of individual ownership by the six respondents. We are of opinion that plain error is not evident in this conclusion.

No case involving the same situation as in the instant case has come to our attention. In Goldthwaite v. Janney, supra, the controversy was between creditors of the partnership and creditors of the partners individually. The legal title stood in the name of one or more of the partners individually and not in the name of the firm. In holding that the property was partnership property, this court said:

"It is a rule of universal recognition, that real estate acquired with partnership funds, or on partnership credit and for partnership purposes, is regarded in a court of equity as partnership property, and is subject to the payment of partnership debts, in preference and priority to the separate debts of the several parties; and it is wholly immaterial, says Judge Story, 'in the view of a court of equity, in whose name or names the purchase is made, and the conveyance is taken; whether in the name of one partner, or of all the partners, whether in the name of a stranger alone, or of a stranger jointly with one partner. In all these cases, let the *legal* title be vested in whom it may, it is in equity deemed partnership property, not subject to survivorship; and the partners are deemed the *cestuis que trust* therefor.'—2 Story's Eq., § 1207; Hatchett v. Blanton, 72 Ala. 423; Little v. Snedecor, 52 Ala. 167; Offutt v. Scott, 47 Ala. 104; Coles v. Coles, and Dyer v. Clarke, 1 Am.Lead. Cases. (H. & W. notes) 592 and 595.

"Whether the land belongs to a firm or to one of the individuals composing it,—when the title is in his name, and not in that of his firm,—must be solved by what appears to have been the intention of the parties. *Prima facie*, ownership is where the muniment of title places it, but if by all the circumstances attending the transactions,—*which may be shown by parol, if there is no written evidence* [Emphasis Supplied],—it is made to appear, that in the intention of the parties, it was purchased for and was treated as partnership property, that presumption of ownership arising from the face of the deed will be overcome, and the property will be treated as belonging to the partnership. Authorities *supra.*" (102 Ala. at 437, 438, 15 So. at 562)

In *Janney*, the controversy pertained to rights of the creditors of the partnership. In a case which did not involve the claims of creditors of the partnership, but required determination of equitable claims between partners, the Supreme Court of Wisconsin said:

"It is elementary that 'real estate purchased for partnership purposes and appropriated to those purposes, paid for by partnership funds and necessary for partnership purposes, always becomes partnership property. Nor does it seem to be material in what manner, or by what agency, the land is bought, or in what name it stands.' Parsons, Partn.

(4th ed.) § 265. In the same section it is said:

" 'We consider it an established rule in equity that any party holding the legal title to land, however it may have come to him, will be held as trustee for the partnership, if it be certain that the land was in fact a part of their joint property as partners.'

"Another text-writer says:

" 'Where a partnership holds land not as the chief purpose of its existence, but as an incident to its business, the statute of frauds does not apply, and the land may be shown to be part of the partnership stock and affected with partnership equities by oral evidence.' 1 Bates, Partn. § 301.

"Such statements are amply supported by adjudged cases. Among others, see Fairchild v. Fairchild, 64 N.Y. 471; Greenwood v. Marvin, 111 N.Y. 423, 19 N.E. 228; Sherwood v. St. P. & C. R. Co. 21 Minn. 127; Marsh v. Davis, 33 Kan. 326, 6 Pac. 612. Such real estate, so purchased and held, is, in equity, not only considered as the property of the firm for the payment of its debts, but also 'for the purpose of adjusting the equitable claims of the copartners as between themselves.' Smith v. Tarlton, 2 Barb.Ch. 336. Here, upon the dissolution of the firm and in the adjustment of such equitable claims between the partners, *Curtiss* was to convey his legal title to the land to plaintiffs; and his refusal to do so and his conveyance to *Carpenter* was a breach of trust and fraud on the plaintiffs. . . . . " Kyle v. Carpenter, 130 Wis. 310, 316, 317, 110 N.W. 187, 189.

See: Merchant v. Smith-Powers Logging Co., 91 Or. 442, 178 P. 939; Deming v. Moss, 40 Utah 501, 121 P. 971.

No partnership funds and no funds from anyone else were paid to complainant and J. W. Cooper, Jr. as consideration for the conveyance of the three parcels to the six respondents. The 1964 decree determined that complainant and the six respondents were partners. The respondent Sadie Cooper Margado testified that they were all partners in connection with the mall property and that the income from the filling station, barbecue stand, and mall property were put in the pot for the benefit of herself, her brothers, sister, and parents.[4] This testimony supports a finding that the grantors conveyed the three parcels to the six grantees to be used by the partnership for partnership purposes.

We are of opinion that the rule allowing parol evidence to prove the intent of the parties with respect to equitable rights and title to real estate applies in the instant case, and that the evidence

---

4. "Q. You were all partners in connection there with the mall property, you all owned it together, and worked on it and acquired it?

"A We always worked.

"Q I didn't ask you whether you always worked, please, ma'am. I ask the Court to ask her to answer my question, please.

"Q You claim that all of you worked, earned and acquired what is known as the mall property?

"A I do believe.

"Q Over what period of years?

"A From the time of acquisition until this date.

" . . . . . . . . . . . .

"Q And what was the agreement as to what was to be done with the rent?

"A It was to be put in the pot?

"Q Yes.

"A Absolut*ley*.

"Q That was all to be put in the pot for the benefit of you, your brothers and sister, and your father?

"A And my mother.

"Q And your mother, too?

"A Yes.

"Q And that is the arrangement you all had with reference to the income from the filling station, from the barbecue stand, and from the mall property?

"A Are you asking me? I mean, was he asking me?

"THE REGISTER: I believe he was asking you the question.

"A That was supposed to have been the arrangement, yes."

supports a finding that it was the intent of the parties that the six respondents should hold the legal title in trust for the partnership. It follows that the conveyance of the land constituted a contribution to partnership capital made by complainant and J. W. Cooper, Jr.

■■■■■ Finally, we must determine the proper disposition of firm capital upon dissolution of a partnership, and decide whether the register's conclusions in this regard were plainly wrong. Assignment of error 7 embraces the objections to these conclusions. And, our inquiry is confined to the rules applicable where one or more partners contribute all the capital and the other(s) contribute(s) only skill and labor.[5] Although no expression by this court has been found on the point, the generally accepted view is that the contributing partner is entitled to repayment of the capital contributed by him before any distribution of profits is made. Johnson v. Jackson, 130 Ky. 751, 111 S.W. 260; Uhrig v. Redding, 150 Fla. 480, 8 So.2d 4; 68 C.J.S. Partnership § 391(b) page 905, and § 437(b), page 979; 40 Am.Jur., Partnership, § 348, page 373. In the instant case, we will follow the general rule that in the absence of an agreement to the contrary, capital furnished by a partner is a debt owed by the firm to the contributing partner, and on dissolution of the partnership is to be paid to him, if the firm's assets are sufficient after payment of the firm's liabilities to outsiders. Here the interest in the realty contributed by the complainant and J. W. Cooper, Jr. was returned to them subject to certain firm debts and assessments against the property. The complainant was ordered by the court to pay each of these debts. We find no error in the register's conclusions nor in the court's affirmation thereof.

We are not unmindful of the conflict which may seem to exist between the decree of July 14, 1964, and that of November 4, 1968, the latter seemingly overruling the former by adopting the register's report of reference. Upon examination, however (as we have already attempted to show), such conflict is found to exist in appearance only and not in substance. Complainant's contention in his bill of complaint was that he was entitled to have the deeds in controversy set aside under the provisions of Title 20, § 15, Code. In pertinent part that section provides:

"Any conveyance of realty, of which a material part of the consideration is the agreement of the grantee to support the grantor during life, is void at the option of the grantor . . . . if, during the life of the grantor he takes proceedings in equity to annul such conveyance."

■■■ This section is to be construed strictly, Heartsill v. Thompson, 245 Ala. 215, 16 So.2d 507, and the evidence put forward to establish a grantor's claim that part of the consideration for which his deed was made was a promise of support, must be clear, satisfactory and convincing. Scott v. McGill, 245 Ala. 256, 16 So.2d 866. The evidence presented supports a finding that none of the respondents made a personal agreement to support the grantor(s), and thus failed to measure up to the statutory requirements. Accordingly, the trial judge stated in his decree that the court was of the opinion that the evidence is insufficient to reasonably satisfy the court that complainant is entitled to the relief prayed for under the provisions of Title 20, § 15; and that for said reason, his prayer for relief should be denied.

■■■ We understand this to mean that the decree amounted only to a ruling that the complainant had failed to bring himself within the protection of Title 20, § 15. It in no way denied the existence of the part-

---

5. The register's report found that the five appellants made no contribution to the partnership other than their time and labor, and that no agreement was made as to the disposition of the realty upon dissolution of the partnership.

nership; nor did it preclude the register's inquiry to ascertain the intent of the parties with respect to the equitable title to partnership assets. The register's report and the decree confirming it were concerned only with the identification of firm property and its proper disposition upon dissolution of the partnership. We are of opinion that the 1964 decree was not reversed or modified by the report of the register nor by the decree appealed from.

For the reasons we have undertaken to state, the decree appealed from is due to be and is affirmed.

Affirmed.

HEFLIN, C. J., and BLOODWORTH, McCALL, and SOMERVILLE, JJ., concur.