325 So.2d 165

**Richard M. MORVAY and John Dix**

v.

**Vernett DRAKE and H. H. Drake.**

**SC 1426.**

Supreme Court of Alabama.

Jan. 2, 1976.

James F. Berry, Cullman, for appellees.

Markstein & Morris, Birmingham, for appellants.

JONES, Justice.

This is an appeal from a decree enjoining John Dix from foreclosing a mortgage which he holds on the property of Vernett and H. H. Drake. We affirm.

The mortgage in question is dated May 25, 1970, and was originally granted to Dix's brother, Richard Morvay. Prior to the execution of the mortgage, H. H. Drake owed Dix $4,050, which was represented by two unsecured promissory notes and Dix owed Morvay an unsecured debt of $5,000. For many years, Drake had regularly borrowed money from Dix without security and had repaid him. Shortly before the execution of the mortgage in question, Drake again approached Dix for money. Each party tells a different version of Dix's response to Drake's request.

Drake's version is that Dix told him he did not have enough money to lend him anything, but his brother, Morvay, who lived in California, might be able to lend

Drake some money if Drake could give Morvay some security. Drake said that he agreed to this and persuaded his wife, who owned a 60-acre farm, to execute a mortgage to Morvay as security for a $5,000 loan which Dix promised to get for Drake from Morvay. Drake also says that on the date of the execution of the mortgage Dix made Drake an unsecured personal loan of approximately $250. All of the parties agree that Morvay never actually loaned Drake any money.

Dix's version is that when Drake approached him for more money, Dix agreed to lend it to him if Drake could offer security. When Drake persuaded his wife to execute a mortgage, Dix says that he told Drake about his own $5,000 debt to Morvay and asked Drake to execute a mortgage to Morvay in exchange for a $950 loan from Dix. Drake agreed and Dix loaned him $950 for the mortgage on Vernett's property. Dix concludes that the new $950 loan combines with Drake's prior debt of $4,050 for the $5,000 figure on the mortgage.

The mortgage provided for repayment of the $5,000 by May 25, 1971, and provided for no interest. Drake did not pay the debt within the year and Dix began foreclosure proceedings in May, 1972. In June, 1972, the Drakes and Dix entered an agreement whereby Dix agreed to stop the foreclosure proceedings in exchange for $1,050 cash and Drake's promise to pay Dix $100 a week until his debt was paid off. Drake never made any of the $100 payments and in June of 1973 Drake instituted this suit to enjoin the foreclosure of the mortgage. In October, 1974, Morvay transferred the mortgage to Dix for the purpose of defending this suit.

Drake contends that the mortgage is void because he never received the $5,000 loan from Morvay. He claims that Dix defrauded him by promising him a $5,000 loan from Morvay in order to get Morvay security for Dix's own $5,000 debt to Mor-

vay. Since the mortgage was void, Drake contends that it could not be ratified by the agreement to stop the foreclosure proceedings which the parties entered in 1972.

Dix contends that he never promised Drake a loan from Morvay. The only debts which the mortgage secured were the $4,050 prior debt plus the $950 which he loaned Drake on the date of the mortgage. (Drake denies receiving $950 and claims he only received an unsecured personal loan of approximately $250.) Dix further contends that even if Drake did give the mortgage to secure the promised but unconsummated loan from Morvay, Drake's subsequent agreement with Dix stopping the foreclosure ratified the defect in the original instrument. To support his ratification theory, Dix cites *Hughes v. Duke*, 251 Ala. 220, 36 So.2d 300 (1948). The *Hughes* case, however, did not concern a mortgage, but rather a deed which was sought to be cancelled under Tit. 20, § 15, Code. Tit. 20, § 15, which provides for a right to rescind conveyances made upon a promise of support, has no application to a situation in which no loan is received by a mortgagor in consideration for his mortgage.

To analyze the ratification theory, it is necessary to consider the nature of the defect which Dix claims was ratified. If Drake gave the mortgage to secure the promised loan from Morvay, the defect is that the mortgagor received no consideration for the obligation which the mortgage secured. This defect renders the mortgage a nullity in equity. Alabama law has long recognized the dual character of mortgages as conveyances of estates in land at law and security for debts in equity. *Welsh v. Phillips*, 54 Ala. 309 (1875). The standard treatises on mortgages explain that the legal mortgage itself does not require consideration because it is simply an executed conveyance of real property. But, in equity, a mortgage is a nullity except insofar as it secures a valid obligation. Osborne,

Handbook on Law of Mortgages, § 107 (1951); 5 Tiffany, *The Law of Real Property*, § 1401 (1939). The usual statement of this rule in the Alabama cases is, "if there is no debt there is no mortgage." *Jarrett v. Hagedorn*, 237 Ala. 66, 185 So. 401 (1938); *Lee v. Macon County Bank*, 233 Ala. 522, 172 So. 662 (1937).

Applying this rule to the Morvay-Drake mortgage, we must conclude that the only way to cure the defect in the mortgage was to create a debt for the mortgage to secure. To do this, Morvay (or Dix acting in Morvay's behalf) must have actually loaned Drake $5,000 thereby fulfilling the consideration for Drake's obligation to pay $5,000. Since the substance of the agreement to stop foreclosure was Drake's paying money to Dix, the agreement was ineffective to ratify the mortgage from Drake to Morvay.

The sole issue before this Court is a factual one. What debt did the mortgage secure? If it secured a promised but unconsummated loan from Morvay to Drake, the trial Judge is authorized to declare the mortgage void for failure of consideration. *King Lumber Co. v. Spragner*, 176 Ala. 564, 58 So. 920 (1912). If it secured Drake's prior debts to Dix plus the disputed $950 loan, then the mortgage is valid and may be foreclosed. There is ample evidence to support either conclusion. The trial Judge heard the evidence ore tenus and concluded that the foreclosure should be enjoined. Under our well-established rules for review of ore tenus trials, we will not disturb the trial Court's findings unless they are clearly and palpably wrong or without supporting evidence, or are manifestly unjust. *Sterling Oil of Oklahoma, Inc. v. Pack*, 291 Ala. 727, 287 So.2d 847 (1973). We therefore affirm.

Affirmed.

HEFLIN, C. J., and MERRILL, MADDOX and SHORES, JJ., concur.