[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 1043 
Max Rodgers appeals from a judgment of the Coffee Circuit Court to the extent that it rescinded a deed pursuant to Ala. Code 1975, § 8-9-12, and reformed a mortgage in favor of Ann C. Rodgers and Louie Rodgers. We affirm the portion of the trial court's judgment reforming the mortgage in favor of Ann C. Rodgers and Louie Rodgers, and we reverse the judgment to the extent that it rescinded the deed.
 Procedural History
On June 18, 2004, Ann C. Rodgers ("Ann") and Louie Rodgers ("Louie") filed a seven-count complaint against Max Rodgers ("Max") in the Coffee Circuit Court. Ann and Louie later filed an amended five-count complaint. The amended complaint included counts asserting the following: (1) the tort of outrage; (2) fraud; (3) wrongful eviction; (4) a claim seeking to set aside the conveyance of property located at 704 Plaza Drive, Enterprise, Alabama ("the Alabama property"), pursuant to Ala. Code 1975, § 8-19-12; and (5) a claim seeking to set aside the conveyance of a mortgage on property located in Townes County, Georgia ("the Georgia property"), pursuant to § 8-19-12. Upon Max's motion, the court entered a summary judgment in favor of Max on the tort-of-outrage claim. The remaining four counts proceeded to a bench trial on May 16, 2006.
After the trial, the court entered a final judgment on June 7, 2006. The court found in favor of Max as to the fraud and wrongful-eviction claims. The court found in favor of Ann and Louie on the claim seeking to set aside the conveyance of the Alabama property and, therefore, rescinded the deed conveying that property. The court also found that the purpose of the mortgage on the Georgia property was to ensure that Max would receive $10,000 when and if that property was sold; the court, therefore, reformed the mortgage to prohibit enforcement of the interest provision in the mortgage and to prohibit enforcement of the mortgage until such time as the Georgia property was sold.
On June 22, 2006, Max filed a motion to alter, amend, or vacate the judgment and a motion for a new trial. On July 20, 2006, the court denied both postjudgment motions. Max filed his notice of appeal to this court on August 4, 2006. We transferred the appeal to the Alabama Supreme Court for lack of jurisdiction, and that Court transferred the case back to this court, pursuant to Ala. Code 1975, § 12-2-7.
 Facts
Max is the adult son of Ann and Louie. In 1990, Ann and Louie informed Max that they owed the Internal Revenue Service *Page 1044 
("IRS") $10,000 and that they would have to sell the Georgia property to pay that debt. Max subsequently mailed Louie $10,000 to pay the IRS. There was no evidence indicating that Max requested that Louie pay him back; however, Max testified that after he mailed Louie the $10,000, Louie mailed him a promissory note stating that Louie promised to pay Max $10,000, with 8% annual interest, on demand. The promissory note was entered into evidence at the trial; Louie admitted that his signature was on the note. Louie testified, however, that he had no recollection of signing the note and that he had not seen the note before the trial. Louie stated that he would not have signed the note with the payable-on-demand provision. Instead, Louie testified that he had signed a note stating that when the Georgia property was sold, Max would get the first $10,000 from the purchase price. He testified that he had intended for Max to earn 10% annual interest on the $10,000 until the property was sold.
Ann and Louie divorced in 1994, but, subsequent to their divorce, they retained joint ownership of the Alabama property, which was their former marital home place, and the Georgia property, which they had used as vacation property. Louie continued to live on the Alabama property, while Ann moved off the Alabama property into a mobile home.
In early 2000, Louie spoke with Max about his concerns regarding his failing health and the possibility that he may have to go into a nursing home. During their discussions, Louie and Max came to an agreement that Louie and Ann would convey the Alabama property to Max. Ann and Louie testified that Max had promised that Louie could live on the Alabama property for the rest of his life; Max denied making that promise.
On March 30, 2000, Louie and Ann executed a deed conveying the Alabama property to Max. The deed stated that the consideration for the conveyance was $10. There was no evidence presented of any written sales contract; Max, however, testified that the parties had agreed that he would pay $10,000 down toward the purchase price of the property and that he would execute a $50,000 mortgage in favor of Ann and Louie. It was undisputed that Max paid off the existing mortgage on the Alabama property. Max testified that the balance on the existing mortgage was $8,186.31.[1] Max testified that he deposited the balance of the $10,000 down payment into an escrow account, which was later transferred into an account set up in Ann's and Louie's names ("the joint account"). Max also executed a $50,000 mortgage in favor of Ann and Louie. The mortgage provided that Max would make monthly payments in the amount of $366.88 to Ann and Louie until the entire balance, including principle and interest at the rate of 8% annually, was paid in full. The evidence showed that Max did, in fact, deposit all the monthly mortgage payments in the amount of $367.00 regularly into the joint account. Ann testified that she and Louie were going to use the money in that account to live on in their older age. The attorney who handled the closing on the Alabama property testified that, at the closing, Louie had voiced concerns about his health and that Max had told Louie that he would be able to live on the Alabama property and that he would have monthly income from the mortgage payments.
Although the Alabama property was appraised for $60,000, Louie testified that he had received an offer to purchase the *Page 1045 
property for $85,000 and that he would not have sold the property for less than $65,000. Louie stated that the only reason he had sold the property to Max was because Max had agreed that Louie could live there for the rest of his life. Ann also testified that she would not have sold the property to Max if she had not believed that Louie would be able to live on the property the rest of his life. Both Ann and Louie testified that Max does not support them and that they do not need him to support them for life.
On the same day that the Alabama property was deeded to Max, Louie and Ann executed a $10,000 mortgage in favor of Max that was secured by the Georgia property. The mortgage was payable at an 8% annual interest rate on demand. Both Louie and Ann testified that they did not know that they were executing a mortgage on the Georgia property and that they would not have signed the mortgage if they had known what it was. Max, however, testified that he saw the mortgage document for the first time when Louie signed it and presented it to him at the closing. Max stated that at that time he had asked Louie what the document was and that Louie had explained that he wanted to ensure that Max got his $10,000 back out of the Georgia property and that he had therefore had the mortgage document drafted. The attorney who handled the closing on the Alabama property and who had drafted the mortgage on the Georgia property testified that he had explained the legal effect of the mortgage on the Georgia property to Ann and Louie before they executed it.
 Standard of Review
"When a judge in a nonjury case hears oral testimony, a judgment based on findings of fact based on that testimony will be presumed correct and will not be disturbed on appeal except for a plain and palpable error." Allstate Ins. Co. v.Skelton, 675 So.2d 377, 379 (Ala. 1996). "[H]owever, that presumption has no application when the trial court is shown to have improperly applied the law to the facts." Ex parteBoard of Zoning Adjustment of Mobile, 636 So.2d 415, 417
(Ala. 1994).
 Discussion I. Conveyance of the Alabama Property
Max first argues that the trial court erred by rescinding the conveyance of the Alabama property to Max pursuant to Ala. Code 1975, § 8-9-12, because, he says, there was insufficient evidence showing that "a material part of the consideration is the agreement of the grantee to support the grantor during life." We agree.
Section 8-9-12 provides:
 "Any conveyance of realty wherein a material part of the consideration is the agreement of the grantee to support the grantor during life is void at the option of the grantor, except as to bona fide purchasers for value, lienees, and mortgagees without notice, if, during the life of the grantor, he takes proceedings to annul such conveyance."
In Tolver v. Tolver, 585 So.2d 1, 2 (Ala. 1991), our supreme court stated:
 "Section 8-9-12 was originally enacted to cure the twin evils of injustice and fraud when the elderly and infirm are lured into executing conveyances upon promises of lifetime support. Bush v. Greer, 235 Ala. 56, 177 So. 341 (1937). Because the statute is a restriction on the power to contract, this Court has held that it is to be `construed rather strictly so as to confine its operation to legislative purpose, but not so narrowly as to defeat such purpose.' Heartsill v. *Page 1046 Thompson, 245 Ala. 215, 218, 16 So.2d 507, 509 (1944)."
In Tolver, Robert Tolver sought to set aside a conveyance of certain real property to his son and daughter-in-law. The deed stated that the consideration was" `one dollar and other good and valuable consideration.'"585 So.2d at 1. It was undisputed that the sales contract further defined the purchase price to require the grantees to pay off the first mortgage on the property and to pay Robert $10,000 per year for the rest of his life. The contract also stated that Robert could reside on the property for the remainder of his life. Three months after the transaction, Robert filed an action to set aside the conveyance pursuant to § 8-9-12. At the trial, none of the parties testified specifically that the grantees had agreed to support Robert for life. Nevertheless, the trial court rescinded the deed.
On appeal, the supreme court reversed. The court stated that
 "`[p]arol evidence may be used to prove such an agreement as consideration so long as it does not contradict a written statement of the full consideration,' but such evidence `must be clear, satisfactory, and convincing that such an agreement was a material part of the consideration for the deed.' Vaughn v. Carter, 488 So.2d 1348, 1350
(Ala. 1986), citing Stewart v. Dickerson, 455 So.2d 809 (Ala. 1984), Entrekin v. Entrekin, 388 So.2d 931 (Ala. 1980), and Cooper v. Cooper, 289 Ala. 263, 266 So.2d 871 (1972)."
Tolver, 585 So.2d at 2. The court further clarified that, in this context, parol evidence is "clear, satisfactory, and convincing . . . when it is undisputed that no other consideration was given and the parties themselves testify that the grantees promised to support the grantor for life."Tolver, 585 So.2d at 3. Reviewing the deed and sales contract at issue, the court in Tolver found no definitive promise of support that could be deemed to be a material part of the consideration for the conveyance. The court found that the only consideration cited — the satisfaction of the first mortgage and the annual payments — had, in fact, been paid. The grantees testified unequivocally that they did not promise to support Robert for life. Robert, himself, agreed that the transaction did not secure his support and that he continued to be responsible for his own bills. The attorney who prepared the deed also testified that the grantees did not agree to support Robert for life. A witness testified that the son stated to Robert at the time of the transaction that Robert could use the money from the sale to buy his medicine and to support himself. However, the court held that Robert "`[could not] turn a promise to pay money into a promise to support and maintain, merely because [he] intend[ed] to use the money for that purpose.'"585 So.2d at 4 (quoting Hanners v. Hanners, 262 Ala. 143, 145,77 So.2d 484, 486 (1955)). The court concluded that the parol evidence presented by Robert did not satisfy his burden to prove by clear and convincing evidence that the consideration for the conveyance included the grantees' promise to support him for life.
Just as in Tolver, in the instant case the only document memorializing the transaction does not mention any promise of life-time support as a material part of the consideration. However, the deed does not purport to recite the full consideration, so Ann and Louie were permitted to present parol evidence to prove that Max did, in fact, promise to support Ann and Louie for life so long as that evidence satisfied the clear and convincing burden of proof set out inTolver. See Alexander v. Wade, 806 So.2d 1215, 1218
(Ala.Civ.App. 1999) (quoting Faulkner v. Walters,661 So.2d 227, 229 (Ala. 1995)) (holding parol evidence *Page 1047 
admissible "`as long as that evidence does not contradict a written statement of the full consideration'").
We find that the parol evidence offered by Ann and Louie does not satisfy the heavy standard set out in Tolver. Max testified that he agreed to pay $10,000 down on the property and to execute an additional $50,000 mortgage in favor of Ann and Louie, requiring him to pay $366.88 per month to Ann and Louie. The evidence showed that Max paid the $10,000 by satisfying the existing mortgage on the Alabama property and depositing the balance into the joint account. Max also regularly paid Ann and Louie $366.88 per month. Max unconditionally denied that he had promised to support Ann or Louie for life in order to obtain the property. Neither Ann nor Louie testified specifically that Max had promised to support them for life; rather, both Ann and Louie testified that they did not need Max's support for life and, in fact, supported themselves. Specifically, Louie testified that Max does not pay his bills, buy his groceries or clothes, or pay for his medical care.[2]
Further, Louie and Ann cannot turn the promise to pay monthly mortgage payments into a promise to support them simply because they intend to use the money for their support.
Louie testified that Max promised he could live on the property for the rest of his life, but, even if true, [3] that promise does not equate to an agreement to support Louie, either partially or wholly, [4] for the rest of his life, as Judge Bryan contends in his special writing. In Tolver,supra, the sales contract actually contained a provision that stated, "buyer agrees that the seller shall be allowed to live in the residence where he presently resides." The trial court found that this agreement, plus the promise to regularly pay the seller $10,000 per year, amounted to clear and convincing evidence of a promise of lifetime support. As set out above, the supreme court rejected this reasoning. Based onTolver, it is clear that Max's promise to allow Louie to live in the house for the rest of his life is not tantamount to a promise of lifetime support.
Because Ann and Louie failed to present clear and convincing evidence indicating that "a material part of the consideration is the agreement of the grantee to support the grantor during life," we conclude that the trial court erred in rescinding the conveyance of the Alabama property.[5] *Page 1048 
 II. Mortgage on the Georgia Property
Although Ann and Louie sought to set aside the conveyance of the mortgage, the court entered a judgment reforming the mortgage. Max contends that the trial court erred in reforming the terms of the mortgage on the Georgia property. Ann and Louie, however, argue that the evidence supported the trial court's reformation of the mortgage pursuant to Ala. Code 1975, § 35-4-153. That section provides:
 "When, through fraud, or a mutual mistake of the parties, or a mistake of one party which the other at the time knew or suspected, a deed, mortgage or other conveyance does not truly express the intention of the parties, it may be revised by a court on the application of the party aggrieved so as to express that intention, insofar as this can be done without prejudice to rights acquired by third persons in good faith and for value."
Upon our review of the record, we conclude that the evidence does not support reformation pursuant to § 35-4-153. We, however, can affirm the trial court's judgment "if it is right for any reason, even one not presented to or considered by the trial judge." Premiere Chevrolet, Inc. v. Headrick,748 So.2d 891, 893 (Ala. 1999).
The evidence presented at trial establishes that Max mailed Louie $10,000 without any request that Louie repay him. Louie, however, upon receipt of the $10,000, voluntarily executed a promissory note in favor of Max in order to create a document that would explain the income to the IRS. Louie testified at trial that he later agreed to pay Max 10% annual interest on the $10,000, but there was no evidence indicating that the parties conditioned the transaction on the payment of any interest. Max did not present evidence of any other consideration for the promissory note or the mortgage on the Georgia property. "`A past consideration is insufficient, even though of benefit to the promisor, where the services rendered or things of value furnished are intended and expected to be gratuitous.'" Gregory v. Hardy, 53 Ala.App. 705, 711,304 So.2d 209, 214 (Civ. 1974) (quoting 17 C.J.S.Contracts § 116, p. 838). "[I]n equity, a mortgage is a nullity except insofar as it secures a valid obligation." Morvay v. Drake, 295 Ala. 174, 176,325 So.2d 165, 167 (1976). Because the consideration for Louie's obligation was insufficient as a matter of law, any error on the part of the trial court with regard to reformation of that mortgage was harmless. See Rule 45, Ala. R.App. P.[6]
Based on the foregoing, we reverse the trial court's judgment to the extent that it rescinded the conveyance of the Alabama property, but we affirm that portion of the trial court's judgment reforming the mortgage on the Georgia property.
Ann and Louie's request for the award of an attorney fee on appeal is denied.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
PITTMAN and THOMAS, JJ., concur.
 RODGERS v. RODGERS *Page 1049 
THOMPSON, P.J., concurs in the result, without writing.
BRYAN, J., concurs in part and dissents in part, with writing.
[1] Louie, however, said that Max had told him that the balance was $5,000.
[2] We note this evidence to indicate the similarities between this case and Tolver, supra. We agree with Judge Bryan, however, that this evidence is not decisive of the question whether Max promised to support Louie because "`it is immaterial whether that promise has been kept or not.'" Exparte Alexander, 806 So.2d 1222, 1225 (Ala. 2001) (quotingMcAdory v. Jones, 260 Ala. 547, 550, 71 So.2d 526, 529
(1954)) (emphasis omitted).
[3] For the purposes of this appeal, we presume the trial court accepted as true Ann's testimony, set out at length by Judge Bryan in his special writing, that Max promised to let Louie live in the house for the rest of his life. Even if her testimony was accurate and uncontradicted, the result would be the same as a matter of law. Hence, we are not reweighing the evidence to substitute our judgment for that of the trial court's as Judge Bryan asserts.
[4] In his special writing, Judge Bryan argues that § 8-19-12 covers a promise to provide only partial support. We need not decide that question because, even if the statute covers a promise to provide partial support, in our view this case does not present such a situation. A promise to purchase a home, but allow the grantor to continue to reside in the home, is not a promise to provide any support to the grantor, as implicitly held in Tolver, supra.
[5] Because we reverse the trial court's judgment insofar as it rescinded the conveyance of the Alabama property, we do not address Max's argument that Louie and Ann were unjustly enriched by the trial court's rescission of the conveyance. Our reversal of the trial court's rescission of the conveyance of the Alabama property also moots any consideration of Max's argument that the trial court erred in finding that he was not a bona fide purchaser.
[6] We do not hold that the mortgage on the Georgia property is void because that issue is not before us. We simply hold that Max could not have been aggrieved by the trial court's judgment reforming a mortgage that did not secure a valid obligation.